## The Branch of the Bank of the State of Alabama at Montgomery v. Knox & Co.

1. If a Bank is authorized by its charter to receive money on deposite, *Quere*, whether, under this power, it may not lawfully undertake to collect moneys on all negotiable commercial secureties, when no other act is necessary to be done than to forward the securities to their place of payment, and demand and receive the money.

2. When a Bank is authorized by its charter, to deal in bills of exchange and discount notes made negotiable and payable at the Bank, with two or more good and sufficient securities, it may, under this power, undertake to collect bills of exchange on other places; the restriction, if one is imposed by these terms, only extends to promissory notes.

3. If a Bank receives a bill for collection, and omits to present it at the proper time and place, for payment, and a loss is sustained in consequence of this omission, the Bank is liable to the extent of the loss.

4. If the owner of a bill, on which the remedy has been lost by the neglect of a Bank or its officers, withdraws it from the custody of the Bank, he does not thereby waive his action against the Bank, nor will the pursuit of any of the parties discharge the Bank from the liability to answer for its negligence.

Writ of error to the Circuit Court of Montgomery County.

ACTION of assumpsit, for not collecting a bill of exchange. The declaration states that the Bank undertook the collection of the bill, and to make the necessary demand of payment at the time and place when and where the same was due. The breach assigned is, that the Bank omitted to present it for payment, whereby the amount was wholly lost to the plaintiffs. Demurrer to the declaration. This was overruled; and the Bank then pleaded non-assumpsit; on which issue a verdict was found, and judgment rendered for the plaintiffs.

At the trial it was proved, that it was usual for the Bank to receive bills payable in Mobile, for collection, and that the rate of exchange between Montgomery and Mobile, was from one-fourth to one-half per cent.; that the Bank had an officer, whose duty

The Branch of the Bank of the State of Alabama at Montgomery v. Knox & Co.

it was, to send forward the paper received for collection; that this officer neglected to transmit the bill deposited by the plaintiffs for collection, by which neglect the endorsers were discharged; that the endorsers were solvent, but the drawer and acceptor were totally insolvent; that two or three weeks before the trial, the plaintiff's agent had received the bill from the Bank and handed it to the plaintiff's attorney: and that the Bank officer had given bond to the Bank for the faithful performance of his duty.   On this state of proof, the court charged the jury: That if they believed the Bank received the bill for collection in conformity to its usage, it was bound to use due diligence to insure its collection; and if, by its negligence, the endorsers were discharged, and the bill became worthless to the plaintiffs, they were entitled to recover.

The defendant requested the Court to charge the jury:

1st. That the Bank had no power to receive the bill for collection, and therefore it was not liable:

2d. That if the Bank appointed a competent officer to receive and attend to the collection of paper deposited for that purpose, the bank was not liable:

3d. That if the plaintiffs received the bill from the Bank after the neglect, this circumstance, unexplained, authorized the presumption, that the plaintiffs had waived the neglect.   These instructions were refused, but the court informed the jury, that if the bill of exchange was withdrawn from the Bank, and handed to the plaintiff's attorney, to be used at the trial of the suit, this act, by itself, did not amount to a waiver of the neglect.

The defendant excepted; and the assignment of errors opens the demurrer as well as the several questions arising out of the instructions given and refused.

GEO. GOLDTHWAITE, for the plaintiff in error—relied on two points to reverse the judgment:

1st. That the Bank is not authorized by its charter, to make such a contract as declared on:

2d. That Knox & Co. waived their action against the Bank,

by withdrawing the bill from its custody; at least, this matter should have been left with the jury.

DARGAN, contra.

GOLDTHWAITE, J.—1. We will not stop, at this time, to examine how far it is consistent with the rules of law, to allow a corporation to discharge itself from the consequences of a breach of a contract lawful in itself, and in no wise prohibited, under the allegation of a want of capacity to enter into the engagement. This is a most important question; but it does not necessarily arise in this case, if the contract disclosed in the declaration is warranted by the charter of the Bank, and this we think will be apparent, on a very brief examination.

The Bank is specially authorized to receive moneys *on deposit, and pay the same out to order, free of expense.* It is notorious, that the deposits in a Bank are, often times, the foundation of its issues in bills, and are, perhaps, as legitimately so, as any other that exists, except a specie capital. It is equally notorious, and was so when this charter was created, that all similar institutions in this, and in other countries, undertake the collection of all kinds of negotiable commercial securities, as a means to increase their deposits, and to afford facilities for exchange. It is not then unreasonable to conclude, that when the Bank was authorized to receive money on deposit, the legislature contemplated that it should be allowed to use the necessary means to effect the end. We cannot doubt that the Bank would be authorized to receive a deposit in Mobile, or elsewhere, if permitted by the local law; and it cannot be said that any substantial difference exists between the receiving of a deposit at that place and collecting a bill payable there, when, after collection, the money, for the time at least, is a deposit. We therefore incline to believe that an authority to collect all kinds of negotiable commercial securities may be deduced from the power to receive money on deposit, when no other act is necessary to be performed, than to forward the securities to their place of payment, and demand and receive payment.

2. The Bank is likewise authorized to *deal in bills of ex-*

JANUARY TERM, 1840. 151

The Branch of the Bank of the State of Alabama at Montgomery v. Knox & Co.

*change, and discount notes, made negotiable and payable at the Bank, with two or more good and sufficient securities.* It has been argued, that the restriction implied in this clause, extends, as well to bills of exchange as to promissory notes. It is evident that this idea cannot be supported, because a bill of exchange in any other place than Montgomery could not be made *payable* at the Bank; and it would be absurd to suppose that the framers of the charter contemplated only the purchase of bills payable at that place. The restriction, if one is to be implied, certainly extends no further than to promissory notes. It will be seen, that the authority given is not restricted to the *buying* or *selling* of bills of exchange. The Bank is authorized to *deal* in bills, &c. This means "to act between two persons;" "to intervene;" "to have to do with." This power necessarily extends to all transactions with bills of exchange, which are in themselves lawful and considered by the Bank as expedient to enable it to transact its business or increase its profits. It might and frequently would be very important for a Bank to collect the same bills which it would be hazardous to purchase, either from the risks attending the course of trade, or because the solvency of the parties might be questionable. To receive them thus, would be important, whenever it became necessary to import specie, or to provide a fund at a distant place. These illustrations we consider sufficient to show that the *dealing* in bills, is not necessarily a purchase, but that it also includes the taking of them for collection.

3. Having shown that the Bank is authorized to deal in bills of exchange, for the purpose of collecting them, it follows as a matter of course, that the manner of this collection is the lawful subject of contract between the Bank and the owner of the bills, and that it is responsible for a breach of its engagements in matters of this kind, as in all other cases in which it is empowered to act; and if in the usual course of business it has undertaken to collect a bill, and has omitted to present it at the proper time and place, whereby a loss is sustained by the owner, the Bank is liable to the extent of the loss.

4. The Bank certainly did not acquire a property in the bill by its omission to make the necessary demand for payment. It belonged to Knox & Co. in precisely the same manner *after* the *negligent* omission, as it did *before*. It might be, that they could enforce their remedy against some party to the bill; and in that event, they might not wish to proceed against the Bank. If they had even pursued a remedy and without success, it would be most unreasonable to consider this pursuit as a waiver of the right of action against the Bank for its negligence. Knox & Co. being the owners of the bill, were entitled to its possession, nor did the delivery of it to them, in any manner destroy their claim against the Bank. If the money was collected, or could have been collected, by the use of proper diligence, from any party to the bill, the injury would be little if any: if a part only could be collected, the Bank was chargeable only for the residue. If the parties were subsequently discharged by Knox & Co. or if the amount of the bill had been lost subsequently to the negligent omission of the Bank, by their improper conduct, this would be matter defence to show that the injury had not been caused by the Bank. And even *after judgment* against the Bank and a satisfaction, it could compel Knox & Co. either to transfer the bill, or coerce the parties yet liable on it (if they should hereafter become solvent) for the benefit of the Bank. We therefore cannot perceive how the receipt of the bill by its owners, could, under any circumstances, operate as a waiver of their right of action. Be this as it may, there is no ground for pretence that this action was waived, for it was commenced, and nearly at the trial term the bill was taken from the Bank to be used as evidence in this cause.

There is no error in the record, and the judgment is affirmed.