JULIUS H. GERHARDT, Appellant, *v.* THE BOATMAN'S SAVING INSTITUTION, Respondent.

*Bailment—Agency—Bank—Negligence.*—A bank receiving promissory notes from its depositors for collection, is responsible for the negligence of a notary appointed by it for a year, and from whom it required a bond for the faithful discharge of his duties, in failing to give notice to an endorser of a negotiable promissory note of a demand upon and refusal of payment by the maker, by which the endorser was discharged. The notary is not, in such a case, an independent officer, in the discharge of a duty devolved upon him by law, but is the agent of the bank.

*Appeal from St. Louis Circuit Court.*

*Gray*, for appellant.

I. Plaintiff, in accordance with the custom of defendant to collect notes for its customers, deposited his note with defendant, and it received it and undertook to collect it, or to take the proper steps to fix the endorser.

On general principles of bailment, defendant was bound to give notice to the endorser of the note, if it undertook the business even as a gratuity—Edw. Bail. 112 ; Sto. Bail. 171, *c.*, p. 181, 4th ed ; 3 Cow. 683–4 ; 11 Wend. 475 ; 1 Arn. 403 ; 6 Mass. 58.

II. But it was not a gratuity ; the use of plaintiff's money was a consideration that required of the defendant a faithful execution of the business undertaken—20 J. R. 372 ; Edw. Bills, 402–4 ; 3 Sandf. 179 ; Ivory v. Bk. of Mo., 36 Mo. 475 ; 6 Blackf., Ind. 225 ; 1 Ala. 148 ; 23 Pick. 330 ; 3 Ala. 206.

III. The fact that defendant gave the note to a notary public for collection, demand, protest, &c., does not release or protect defendant.

1. The notary was defendant's agent, of its own selection, and defendant was responsible for his acts. There is a conflict of authorities on this point, but the courts of Ohio, New York, Indiana and South Carolina, and perhaps of other States, hold a bank liable for the acts of a notary—22 Wend. 215 ; 6 Hill, N. Y. 648. This last case is precisely in

point—3 Seld. 459 ; 1 Kern. 203. This last case says it is no longer an open question in New York—1 Kern. 211 ; 21 Ind. 4 ; 3 Hill, S. C. 77 ; 8 Ohio, 465.

2. Plaintiff could have no recourse on the notary. The notary was not acting for plaintiff. There was no privity between them—6 Taunt. 147-8.

3. The defendant itself, by taking bond with security from the notary in ten thousand dollars, made him its employee to all intents and purposes.

4. Defendant refused to trust to his official character, or bond, but employed him by the year, to do all its business entrusted to him by it ; took a bond, covering just the neglect the notary was guilty of in this case, and have a remedy on said bond.

5. The employment of a notary was not necessary to fix the liability of the endorser. It was a domestic note, and presentment, demand, and notice of dishonor, to the endorser, were all that was needed to fix the liability of the endorser— 3 Hill, S. C. 77. The employment of a notary was not necessary ; a private person could have made the demand and given the notice of dishonor just as well and effectively.

In the conflict of authority on this point in the different States, it should be the duty of the court to make that decision that will insure fidelity on the part of banks, and secure the best interest of the business public.

. *Lackland, Cline & Jamieson,* for respondent.

The only question involved in this case is, in what light shall the acts of a notary of a bank be regarded ; that is, shall he be deemed, in a case of this character, as the agent of the bank, or as an independent officer, discharging the duties and obligations resting on him as such ?

In this case, as the custom of banks was known, which was to hand over to a notary in the afternoon the notes that were not paid during banking hours, if the depositor desired any special measures to be taken, he should have made a special contract, and not having done so, the bank is.

discharged, as it did just what was customary under the im-
plied contract for it to do.   That is, it handed the note over
to a competent notary, to be protested.   The leading case
for the doctrine which exempts the bank from liability is
Bellemire v. The U. S. Bk., 1 Miles, 173, decided by the Dis-
trict Court of Philadelphia in 1836, and affirmed by the
Supreme Court of Pennsylvania in 1839, 4 Whart. 105.
We will further refer the court to the following cases—
Mechanics' Bk. v. Earp, 4 Rawle, 385 ; Wingate v. Mechan-
ics' Bk., 10 Barr, 104.   In this case the court held the bank
was liable, on the ground that there was an express contract
to collect the note, but that it would be otherwise if the note
was merely transmitted to the bank for collection—East
Haddam Bk. v. Scovil, 12 Conn. 32 ; Lawrence v. Stonington
Bk., 6 Conn. 521 ; Fabens v. Mercantile Bk., 23 Pick., Mass.
330 ; Dorchester Bk. v. New England Bk., 1 Cush. 177 ;
Warren Bk. v. Suffolk Bk., 10 Cush. 582 ; Jackson v. Union
Bk., 6 Harr. & Johns., Md. 146 ; Citizen's Bk. v. Howell et
al., 8 Md. 530 ; Tiernan v. Commercial Bk., 7 How., Miss.
648 ; Agricultural Bk. v. Commercial Bk., 7 Smead & Marsh.
592 ; Bowling v. Arthur, 34 Miss. 41 ; Hyde et als. v. Plant-
ers' Bk., 17 La. 560 ;  Baldwin v. Bk. of Louisville, 1 La.
13 ;  Bk. of Washington v. Triplett et als., 1 Pet. 25.

WAGNER, Judge, delivered the opinion of the court.

The facts in this case are mainly these : The plaintiff kept
his regular deposit account with defendant, and in accord-
ance with a uniform custom, delivered to it a negotiable
promissory note for collection.   The note was for $2,500,
made by Henry L. Clark, payable sixty days after date to the
order of Lewis V. Bogy, and by Bogy endorsed to plaintiff,
who endorsed the same and delivered it to defendant for the
purpose above stated.   The note not being paid at maturity,
was delivered by defendant to a notary public for protest,
and to give notice of presentment, demand, and refusal to
pay, to the endorser.   The notary was appointed by the de-
fendant to do all its notarial business, and it had required

him to give bond in the sum of $10,000 for the faithful discharge of his duties. He proceeded to protest the note for non-payment, but, through his negligence and carelessness in giving notice, the endorser was discharged. The maker was insolvent, and this suit is now brought to charge defendant for the negligence of the notary it employed, and through whose instrumentality recourse was lost against the endorser.

The sole point here is, whether the defendant is liable for the negligence, inefficiency and carelessness of the notary, acting as its agent. The question has often been determined in other courts, but the decisions are so conflicting and contradictory, that it cannot be said that any rule can be positively deduced from the weight of authority.

It is not doubted that it is the usual custom of banks, in receiving notes on deposit for collection, to hand them over to a notary to make demand and protest against the maker, and give notice to the endorser, in default of payment at maturity. And therefore it has been held that, where a party, cognizant of this custom, deposits a note for collection, and payment is not made when the same becomes due, and it is regularly delivered to a notary, and he omits to give notice to the endorser of non-payment, the bank, having discharged its entire duty, will not be responsible, but the remedy will be against the notary.

The best considered case that we have met with, holding the banks exempt from liability, is Bellemire v. Bk. of U. S., 1 Miles, 173, affirmed on appeal in 4 Whart. 105. It was there said that the bank should be regarded as having undertaken to collect the note in the customary mode, and that the holder of the note must be understood to have consented to the arrangement; consequently, on default of payment by the maker, it became the duty of the bank to call to its aid the notary, and entrust to him the performance of whatever was necessary to secure the responsibility of the endorsers. And it was moreover declared that the notary being a public officer, he and his securities on his official bond as notary, were liable to the parties injured by his

neglect, but not the bank or person who directly employed him. And this decision has been followed in many cases, though not always for precisely the same reasons—East Haddam Bk. v. Scovil, 12 Conn. 303 ; Warren Bk. v. Suffolk Bk., 10 Cush. 582 ; Citizens' Bk. v. Howell et al., 8 Md. 530 ; Bowling v. Arthur, 34 Miss. 41 ; Hyde v. Planters' Bk., 17 La: An. 560.

But, on the other hand, the bank is held liable for all the acts and omissions of the notary or other agent to whom it delivers the notice. The leading case on this side of the question is Allen v. Merchants' Bk., 22 Wend. 215, in the New York Court of Errors and Appeals, where the whole subject is most elaborately considered, and discussed with masterly ability by Senator Verplanck. In the course of his opinion, that learned jurist said :

" It is well settled in this State that there is an implied undertaking by a bank or banker receiving negotiable paper, deposited for collection, to take the necessary measures to charge the drawer, maker or other proper parties, upon the default or refusal to pay or accept—Smedes v. Bk. of Utica, 20 Johns. 372 ; s. c. in this court, 3 Cow. 663 ; McKinster v. Bk. of Utica, 9 Wend. 46 ; 11 id. 473, s. c. The ground of this rule is that the acceptance of negotiable paper thus deposited for collection, forms an implied undertaking to make the demands and give the notices required by law or mercantile usage for the perfect protection of the holder's rights against all previous parties ; for which undertaking the use of the funds thus temporarily obtained or of the average balances thereof for the purposes of discount or exchange, forms a valuable consideration. Had we no express authority on this head, I should hold the acceptance by a bank of paper for collection from a customer, in the usual course of his business, as sufficient evidence of a valuable consideration. The whole ordinary business of a bank with its dealers is one of mutual profit or accommodation, and it must be taken together (unless some part is separated by express understanding), and it is not for a bank to allege,

or for a court to consider, that a collection in a particular place must be regarded as a gratuitous favor. If accepted at all, the general profits and advantages of the business, of which this may, perhaps, be an unproductive part, form a good consideration for the undertaking. This, however, is not an open question, after the decision of this court in the two cases against the Bank of Utica. What, then, is the ordinary undertaking, contract or agreement of a bank with one of its dealers, in the case of an ordinary deposit of a domestic note or bill, payable in the same town, received for collection? It is a contract made with a coporate body having only a legal existence, and governed by directors, who can act only by officers and agents; or if it be with a private banker, he too is known to carry on his business by clerks and agents. The contract itself is to perform certain duties necessary for the collection of the paper, and the security of the holder. But neither legal construction, nor the common understanding of men of business, can regard this contract (unless there be some express understanding to that effect) as an appointment of the bank as an attorney or personal representative of the owner of the paper, authorized to select other agents, for the purpose of collecting the notes, and nothing more. There is a wide difference made, as well by positive law as by reason of the thing itself, between a contract and undertaking to do a thing, and the delegation of an agent or attorney to procure the doing the same thing—between a contract for building a house, for example, and the appointment of an overseer or superintendent, authorized and undertaking to act for the principal, in having a house built. The contractor is bound to answer for any negligence or default in the performance of his contract, although such negligence or default be not his own, but that of some subcontractor or under-workman. Not so the mere representative agent, who discharges his whole duty if he acts with good faith and ordinary diligence in the selection of his materials, the forming his contracts, and the choice of his workmen. Now, in the case of the deposit for collection of

a domestic note, or bill payable, in the same town, no one can imagine that this, instead of being a contract with the bank to use the proper means for collecting the paper, is a mere delegation of power to act as an attorney for that purpose. If this were so, and it should happen that by the fraud, the carelessness, or the ignorance of a clerk or teller, the only responsible parties were discharged, or the note itself lost or destroyed, it would be a sufficient defence for the bank if it could show that the directors had employed ordinary care and caution in selecting their officers, or any similar defence which would be good in the mouth of an attorney in fact, or a steward acting in good faith for his principal who has been defrauded in any transaction. If such were the understanding of this business, and the merchant had to look to the responsibility of the teller or clerk through whose hands his paper may pass, and not to that of the bank who employs them, few deposits for collection would be made, and it would soon be found expedient to deal only with banks or bankers who would guarantee their officers. But the natural understanding of men of business is surely not this ; it is of an implied agreement with the bank itself, of whose officers and agents they have no knowledge, and with whom they have no privity of contract."

And in the Montgomery Co. Bk. v. Albany City Bk., 7 N. Y. 459, it is laid down with great clearness and emphasis, that "when a bank receives from the owner a bill for collection, payable either at the place where such bank carries on its business, or at some distant place, it thereby becomes the agent of the owner for the collection, and in the discharge of its obligations as such, if the bill has not been accepted, it is bound to present the same for acceptance without unreasonable delay, as well as to present the same for payment when it becomes payable ; and if not accepted when presented for that purpose, or not paid when presented for payment, it must take such steps, by protest and notice, as are necessary to charge the drawer and endorser, or it will be liable to its principal, the owner, for the damages which

the latter sustains by any neglect to perform such duties, unless there be some agreement to the contrary, expressed or implied." And in Commercial Bk. v. Union Bk., 1 Kern. 203, this is declared to be the established law, and no longer an open question. The same doctrine is held in Thompson v. Bk. of the State, 3 Hill, § 77 ; Reeves et al. v. State Bk., 8 Ohio St. 465 ; Am. Ex. Co. v. Haire et al., 21 Ind. 4 ; Bk. of Montgomery v. Knox & Co., 1 Ala. 148 ; Bk. of Mobile v. Huggins, 3 id. 207 ; and to the same effect, Taber v. Perrot et al., 2 Gall. 565, per Story, J. And this is the settled law in England—Van Wart v. Wooley et al., 10 Eng. Com. L. 145 ; Mackersy v. Ramsey et al., 9 Cl. & Finn, 818, H. of Lords.

If the subject of the controversy were a foreign bill of exchange, it might present an entirely different aspect; but it is a negotiable promissory note. A mere private person could have made the demand and given the notice, and the employment of a notary was not necessary. Our statute authorizes and permits a notary to act, but does not require his official action to the exclusion of any other individual.

The defendant having appointed the notary by the year, and required a bond for the faithful performance of his duties, made him its agent and an officer of the bank. Upon recognized and general principles, the principal is " held liable to third persons in a civil suit for frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances, and omissions of duty of his agent, in the course of his employment, although the principal did not authorize, or justify, or participate in, or, indeed, know of such misconduct, or even if he forbade the acts or disapproved of them "—Sto. Agen. § 452.

The notary, in this instance, was not acting in the charac- of an independent officer, in the discharge or execution of a duty devolved upon him by law, but as the agent of the defendant.

The judgment is reversed and the cause remanded. The other judges concur.