JOHN J. DALY, Appellant, *vs.* THE BUTCHERS' AND DROVERS' BANK. OF ST. LOUIS, Respondents.

1. *Banks—Draft forwarded to defaulting correspondent—Responsibility of bank to owner—Measure of.*—Where a bank in this State receives for collection a draft payable in another State, and uses due diligence and forwards the draft to a proper correspondent at the place where the paper is made payable, with proper instructions for collection, its responsibility is at an end, and in case of default by its correspondent, it cannot be held liable to the owner, unless by some after act it makes itself responsible

*Appeal from St. Louis Circuit Court.*

*M. Kinealy,* for Appellant. ·

Defendant received the drafts for collection, not merely for transmission. (Bank of Washington vs. Triplett, 1 Pet., 25.

It will be presumed that the bank undertook the collection for a sufficient consideration and·they will not be permitted to rebut it. Gerhardt vs. Boatmen's Saving Ins., 38 Mo., 60; citing and approving Allen vs. Merchants' Bank, 22 Wend., 215; Morse Banking, 323, 2 para.

The defendant was a contractor for the collection of the drafts, and not the agent of plaintiff, and *is* therefore liable for the loss occasioned by the default and negligence of the Vicksburg Bank. (See Reeves vs. State ·Bank of Ohio, 8 Ohio, [N. S.], 465; Young vs. Noble, 2 Disney, [Ohio,] 485; Commercial Bank of Penn· vs. Union Bank of N. Y., 1 Kern. N. Y., 203; Commercial Bank vs. Union Bank, 19 Barb., 391; Montgomery Co. Bank vs. Albany City Bank, 8 Barb., 396.)

But even if the court should refuse to abide by the doctrine of Gerhardt vs. Boatmen's Saving Ins., and hold defendant the agent of plaintiffs instead of a contractor, we would be entitled to a reversal in this case because the indorsement of defendant on the back of the drafts was an order of appropriation of the proceeds, to their own use, and they thereby constituted the Vicksburg Bank their own agent, and became liable for its negligence and default. (See Tabor vs. Perrott, 2 Gallis., 565; see also Young vs. Noble, *supra.*)

Moreover, the plaintiff being a depositor (customer) of defendant, even on the general doctrine of agency applied to banks, the defendant is liable in this case. (Mackersy vs. Ramsay, 9 Cl. & F., 844--846.)

*A. J. P. Garesche*, for Respondent.

I. The bank having used due diligence by inquiry, and exercised a sound discretion in the choice of its foreign correspondent, cannot be held liable. The nature of its agency implied its power to appoint a sub-agent. For no one can seriously suppose that it was the duty of the bank that it should send one of its own officers to Mississippi to make these several collections. (Ætna Ins. Co. vs. Alton City Bank, 25 Ill., 246; Dorchester M. B'k. vs. N. E. B'k., 1 Cush. [Mass.,] 177; East Haddam B'k. vs. Scovill, 12 Conn., 314. (These decisions conform with the general law of principal and agent.) Sto. Ag., § 201.)

II. And the rule is reasonable. 1st. Because the contract, as contended for by plaintiff, that a bank should answer for the fidelity and solvency of a foreign corporation or person, would be beyond its corporate powers. 2nd. Because it is of very great advantage to the business community that a bank may be authorized to receive such paper for transmission and collection, without other responsibility than that of an honest discretion. Gerhardt vs. Boatmen's Sav. Inst. 38 Mo., 60, is not adverse. The court there says: "If the subject of the controversy were a foreign bill of exchange, it might present an entirely different aspect." See also to same effect Allen vs. Merchants' Bank, 22 Wend:, 224.

In this State it is the rule, that in a case like the present, from the nature of the transaction, the bank has a right to employ a sub-agent. And if so, then the general law of agency applies, that the agent is not responsible if he exercise care and a sound discretion,—both of which conditions are conceded to exist, by the agreed state of facts.

VORIES, Judge, delivered the opinion of the court.

The defendant in this case was a banking corporation authorized and created by the laws of this State, and as such was engaged in receiving deposits of money and securities, buying and selling exchange, and collecting drafts, bills and notes.

The petition alleges that the plaintiff, on the 19th day of October, 1867, was the owner of five different drafts drawn on different persons and firms in the States of Arkansas and Mississippi, for sums amounting to about $150 each, (each of which was particularly described in the petition),and all of which were drawn by P. Flanigan & Co., payable to their own order and by them indorsed.

The petition also charges that, on said 19th day of October, 1867, plaintiff deposited said drafts with the defendants for collection, and that defendant agreed and undertook to collect at the current rate of exchange; that the aggregate amount of said drafts was seven hundred and thirty-two dollars and nineteen cents; that the defendant refused to account to plaintiffs for the drafts, although a reasonable time had elapsed since their delivery to defendant for collection or return, and that defendant had refused to pay plaintiff the amount of said drafts or to return the same; that defendant has collected the amount of the drafts and has thereby become liable to pay the amount thereof to plaintiff, for which judgment is prayed.

The defendant in its answer denies that it agreed to collect the drafts named in the petition, or that it refused to account to plaintiff therefor, or that it has ever refused to return the same, or that it has ever collected the amount thereof. But the defendant states that said drafts were deposited with it with the understanding that defendant would send them to Vicksburg for collection; that pursuant to said agreement defendant did send the drafts to the Vicksburg National Bank, at Vicksburg, Mississippi, for collection; that said bank has not as yet collected the same or accounted to defendant therefor. The case was tried before the court, a jury having been waived.

The case was submitted on the following agreed state of facts, to-wit: "That the plaintiff was a depositor at the defendant's bank; that the plaintiff deposited the drafts named in the petition with defendant; that said drafts were payable with current rate of exchange, and that said drafts were sent by the defendant to the National Bank at Vicksburg, Mississippi; that the National Bank was ordered by defendant to collect and remit; that said bank did collect the following sums, to-wit: Draft on T. F. Mann, for $144.57, on November 2, 1867; Rosenberry & Co., for 149.76, October 22, 1867; L. Morrow, for 128.36, November 5, 1867; that the National Bank at Vicksburg kept the money and failed to remit, and became insolvent; that the Butchers' and Drovers' Bank at St. Louis never received the money collected on said drafts at St. Louis; that the Butchers' and Drovers' Bank has never returned to plaintiff any of the other drafts, nor has said bank ever paid any part of said drafts to him, though the same have been demanded; that the cashier of the Butchers' and Drovers' Bank at St. Louis was P. S. Langton, and that the cashier of the National Bank at Vicksburg was Alex. H. Arthur, and that upon the back of each of said drafts in question the defendant made the following indorsement: "Pay to Alex. H. Arthur, Esq., cashier, or order, for collection for account of Butchers' and Drovers' Bank of St. Louis, P. S. Langton, cashier." It is further admitted that the defendant made inquiries as to the solvency of the National Bank, and became satisfied that it was perfectly safe and sound, and so believed to be at the time the drafts were sent for collection.

Upon this admitted state of facts the Circuit Court, at special term, found for the defendant and rendered a judgment in its favor. The plaintiff then filed a motion for a new trial on the ground that the judgment was not sustained by the law growing out of the facts in the case. This motion being overruled by the court, the plaintiff excepted and appealed to the general term of said court, where the judgment rendered at special term was affirmed, from which last judgment plaintiff appealed to this court.

7—VOL. LVI.

There is no difficulty in reference to the facts in this case; all of the material facts stand admitted. The question is as to the law growing out of the facts admitted. The plaintiff being the owner of certain drafts drawn on certain persons in the States of Mississippi and Arkansas, and being a customer of the defendant (a bank in St. Louis, Mo.), deposited these drafts with the defendant for collection. The defendant forwarded the drafts to the National Bank at Vicksburg, in the State of Mississippi, for collection. The drafts were indorsed by the cashier of defendant to the cashier of the National bank at Vicksburg, for collection for account of Butchers' and Drovers' Bank of St. Louis. The Vicksburg bank collected part of the drafts and shortly afterwards failed and became insolvent without ever paying or otherwise accounting to defendant for the money collected or the drafts uncollected. There is no pretense that the defendant had not used due diligence in selecting the Vicksburg bank as a collecting agent, it being solvent at the time the drafts were forwarded. After the Vicksburg bank became insolvent, the plaintiff demanded the money collected by the Vicksburg bank and the drafts uncollected, of the defendant. The defendant failed to pay the money or deliver the drafts, and the plaintiff commenced this action to recover the amount thereof.

The question is, is the defendant liable for the amount of these drafts in this action, or, in other words, was the Vicksburg bank the agent of the plaintiff for the collection of these drafts, or was it the agent of the defendant? This has for a long time been a vexed question in the commercial world, the decisions on the subject being conflicting both in England and in this country. In the State of New York, although the decisions on the subject have not always been entirely consistent, it is now well settled that, where a bank in that State receives for collection a draft payable in another State, and forwards the draft to a correspondent in the place where the draft is payable, the bank receiving the draft for collection is responsible to the owner; that such correspondent is the agent of the bank transmitting the draft, and not the sub-agent of

the owner of the draft. (Allen vs. Merchants' Bank, 22, Wend., 215; Commercial Bank vs. Union Bank, 1 Kern., 203). And the same rule is adopted in the States of Ohio and Indiana, and perhaps in some other States. (Reeves vs. The State of Ohio, 8 Ohio St., 465; American Express Co. v. Haire, 21st Ind., 4).

The case of Taber vs. Perrot, (2d Gallison, 565,) relied on by the plaintiff in this case, I think is distinguishable from the cases before cited. In that case the money had been collected by the correspondent to whom the bill or draft had been sent, and had been paid out to the order of the party who had transmitted the bill or draft without notice of the interest of the real owner. In such case there can be no doubt but the party who transmitted the bill and converted the funds, and not the correspondent who collected the money, would be liable to the real owner.

In the States of Massachusetts, Pennsylvania, Connecticut, Illinois, and in several other States, the decisions are in direct conflict with those in New York and Ohio before referred to. In the case of Bellemire vs. Bank of United States, (4 Wharton, 105), it was held that the bank should be regarded as having undertaken to collect the note in the customary mode, and the holder of the note must be understood to have consented to the arrangement; consequently on default of payment by the maker, it became the duty of the bank to call to its aid the notary and intrust him with the performance of that which was necessary to secure the responsibility of the indorsers; that the notary being a public officer, he and his sureties on his official bond were liable to the parties injured by his neglect or misconduct, and not the bank or person who directly employed him.

In the case of the Dorchester and Milton Bank vs. The New England Bank, (1 Cushing, 177,) it was held that a bank by which notes and bills payable at a distant place are received for collection, without specific instructions, is bound to transmit. or cause them to be transmitted, by suitable sub-agents, to some suitable bank or other agent at the place of payment for the

purpose; and where suitable sub-agents are employed in good faith, the collecting bank is not liable for their neglect or default. And to the same effect is the case of Warren Bank vs. Suffolk Bank (10 Cushing, 582); East Haddam Bank vs. Scovil, (12 Conn., 303). And to the same effect is the case of the Bank of Washington vs. Triplet & Neale, (1 Peters, 25,) and I might refer to many other cases to the same effect. These cases are not all exactly alike in reference to their particular facts, but the principle involved is deemed to be the same. They are governed by one general idea, which is, that it is the universal custom and habit for banks which receive notes and drafts for collection, the payer of which resides at a distance, to transmit the same to some bank or agency at the place of payment, and that therefore, when the holder of a bill or draft in such case deposits the same with a bank for collection, without instructions to the contrary, he is presumed to do so with reference to such usage and to authorize the bank to transmit the bill or draft accordingly. And when the collecting bank uses due diligence and good faith in selecting a correspondent or bank at the place of payment, to whom the bill or draft is transmitted, it has discharged its whole duty, and this, notwithstanding the draft is indorsed to the agency to which it is transmitted, for collection on account of the collecting bank. Of course in such cases if the bank or other agent, to whom the draft was transmitted, should collect the draft and pay over the proceeds to the first bank or to its order without notice to the contrary from the real owner, the bank to which it was transmitted would be discharged from further liability, and the first bank with which the bill was deposited would be liable to the owner for the proceeds.

In the case of the Ætna Insurance Company vs. The Alton City Bank, (25 Ill. 243,) which was a case involving the question in the present case, the learned judge delivering the opinion of the court uses this language: "Where a bank receives a bill or note for collection against a drawee or maker resident at the place of the bank, or where the bank undertakes for its collection by their own officers, there can be no doubt that it

would be liable for any loss that might result from neglect. But when received for transmission, it has fully discharged its duty by sending the instrument in due season to a competent, reliable agent, with proper instructions for its collection. This is manifestly the rule clearly announced in a large majority of the adjudged cases. And whatever might be our impression if the case were one of first impression, we regard the rule too well and firmly established to feel ourselves at liberty to disturb it."

"In this case it appears the defendant received the bill in controversy for transmission for collection, and in due season forwarded it to their correspondent at the residence of the drawees; that they were competent and reliable, and that defendants in no way contributed to any loss that may have occurred. If then any liability has been incurred to the plaintiff, it is by the St. Louis house, who became their agents, and not by the defendants."

The direct point involved in this case has never, so far as I know, been before this court. In the case of James H. Millikin vs. August F. Shapleigh, (36 Mo., 596,) the plaintiff, the holder of two drafts, deposited them with a bank in Baltimore "for collection;" the bank in Baltimore indorsed the drafts and sent them to a bank or association in St. Louis for collection as their agents. The indorsements were expressed to be "for collection;" but the association in St. Louis had no actual knowledge at the time the drafts were received that the plaintiffs were the owners of the drafts. The drafts were paid, when due, to the association in St. Louis, and the St. Louis house having an unpaid account against the bank at Baltimore, who had then become insolvent, credited the proceeds of the drafts to their account against the Baltimore bank, with which it had had previous dealings. The plaintiffs after this notified the association at St. Louis that they were the owners of the drafts and their proceeds. The plaintiffs demanded the proceeds of the drafts, which were not paid, and the suit was brought for their recovery. The court held that the plaintiffs could recover notwithstanding the drafts were

expressly indorsed in full "for collection" to the association at St. Louis. This decision, although not exactly in point, seems to recognize the fact that the association at St. Louis was the agent of the owner of the drafts and not merely the agent of the bank in Baltimore to which the drafts had been delivered. If the association at St. Louis had advanced money on the drafts or paid for them, to the bank in Baltimore in the usual course of trade without notice of the plaintiff's title, the decision would of course have been for the defendant.

The case of Gerhardt vs. Boatmen's Savings Institution, decided by this court (38 Mo., 60) is relied on by the plaintiff as authority in this case. In that case the plaintiff kept a regular deposit account with defendant, and in accordance with the uniform custom delivered to it a negotiable promissory note for collection. The payer of the note and the defendant both were in St. Louis; the plaintiff indorsed the note and delivered it to defendant for the purpose aforesaid. The note was not paid at maturity, and was delivered by the defendant to a notary public for protest, and to give notice of presentment and refusal to pay to the indorser. The notary was appointed by the defendant to do all of its notarial business, and had given defendant a bond in the sum of ten thousand dollars for the faithful discharge of his duties; and, in fact, the notary was in one sense, an officer of the bank. By his negligence, the plaintiff lost all remedy against the indorser of the note, and the maker was insolvent. The court held that the plaintiff could recover. The conflicting, authorities were examined in the opinion delivered in the case, but the decision was placed on the express ground that the notary, through whose fault the plaintiff sustained the injury, was the agent and officer of the defendant, and was acting in the course of his employment. The learned judge delivering the opinion of the court, used this language: "The defendant having appointed the notary by the year, and required a bond for the faithful performance of his duties, made him its agent and an officer of the bank. Upon recognized

and general principles, the principal is held "liable to third persons in a civil suit for frauds, deceits, concealments, misrepresentations, torts, negligences and other malfeasances and misfeasances and omissions of duty of his agent, in the course of his employment, although the principal did not authorize or justify, or participate in, or indeed know of such misconduct, or even if he forbade the acts or disapproved of them." (Story's Agency, § 452.) This case is consistent with the decision in the case before referred to in 25th Illinois Reports, and is undoubtedly the law. The facts of the case show that the defendant and the payer of the note both resided in the same city, and that it could not have been contemplated by the plaintiff that any sub-agent should be employed in the collection of the note, but that it must have been contemplated that the defendant and its own immediate agents would perform all of the duties necessary to be performed in the collection of the note, and it is wholly unlike a case where a note is deposited with a bank for collection, when the payer of a note resides in a city or state different from where the bank is situate. In the last case it must be contemplated that the note or draft will be transmitted in the usual course of business to a correspondent where the payer of the bill or draft resides, and in such case, although the authorities as we have seen are conflicting on the subject, we think that the weight of the authorities is to the effect that where the bank with which the bill or draft is placed or deposited for collection, uses due diligence and transmits the paper to a proper correspondent for collection, with proper instructions for the collection of the same, its responsibility is at end, unless by some after act it makes itself responsible. In the case under consideration, if the defendant after receiving the drafts for collection had failed to transmit them to a proper and competent correspondent or agent, and at a proper place to facilitate their collection, and the plaintiff had sustained loss thereby, the defendant would doubtless be liable to plaintiff for said loss; but we have no such case before us.

The judgment of the Circuit Court will be affirmed. The other judges concur.