THE WATERLOO MILLING COMPANY

v.

H. KUENSTER & CO.

*Filed at Mt. Vernon October 16, 1895.*

1. BANKS—*whose agent is a collecting bank.* A bank to which drafts are transmitted for collection through another bank receiving them from the holder, is the agent of the holder, and not of the bank transmitting them.

2. SAME—*liability of bank for drafts deposited for collection.* A bank with which a draft is deposited for collection discharges its duty by transmitting it in due season to a suitable agent at the residence of the drawee, with necessary instructions, and is not liable for loss occasioned by the negligence or default of the latter.*

3. SAME—*effect of crediting depositor with worthless drafts received on collection.* Worthless drafts received from a collecting bank by a bank with which paper was originally deposited for collection by the holder, and thereupon credited to such depositor without knowledge of the insolvency of the collecting agent, do not change the rule that such depositor must bear the loss, since the rights are the same as if the worthless drafts had been deposited by him.

4. SAME—*effect of receiving dividend by bank on drafts taken on collection.* The retention of such worthless drafts by the bank after knowledge of the insolvency of the drawer, and the subsequent proof of a claim on the drafts by the bank in its own name, and the receipt of a dividend thereon from the receiver of the drawer, do not relieve the depositor from liability to the bank for the loss sustained on the balance of the drafts.

*Waterloo Milling Co.* v. *Kuenster & Co.* 58 Ill. App. 61, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Monroe county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

This was an action of assumpsit, brought by the Waterloo Milling Company, against H. Kuenster and others, co-partners doing a banking business at Waterloo,

---

*The conflict of authorities on the doctrine of sub-agency of a collecting bank, as affecting liability for loss in bank collections, is shown in a note to *National Butchers, etc. Bank* v. *Hubbell*, (N. Y.) 7 L. R. A. 852.

Illinois, to recover certain moneys alleged to have been collected and received by the defendants from divers persons for the plaintiff, and as its agent. The defendants pleaded *non assumpsit* and gave notice of set-off, and on trial before the court, a jury being waived, the issues were found for the defendants, and their damages, under their notice of set-off, were assessed at $314.33. For that sum and costs the defendants had judgment. On appeal to the Appellate Court that judgment was affirmed, and this appeal is from the judgment of affirmance.

The facts appearing at the trial were all admitted by stipulation, and are as follows :

"The plaintiff is a milling company, doing a general milling business in the city of Waterloo, Monroe county, Illinois, and has been so engaged for seven years last past. The defendants were engaged in the banking business as partners, and have been so engaged for eleven years, in said city of Waterloo. On the 21st of August, 1891, the plaintiff delivered to the defendants its thirty days date draft on one M. J. Heyer, of Wilmington, North Carolina, for $613, with bill of lading attached for flour shipped that day to said Heyer, the said draft to be transmitted by defendants for collection. On the same day the draft was received by the defendants, it, together with the bill of lading attached, was sent to the First National Bank of Wilmington, North Carolina, with instructions to collect same and remit to the defendants. The draft contained the privilege to the drawee of obtaining one per cent discount for cash. This draft was transmitted, as above stated, for collection, in the usual course of business, without any special instructions or any special arrangements as to compensation, except that the defendants were in the habit of charging plaintiff nothing except costs of such collections to them. The plaintiff had been doing business with defendants' bank since 1886, and kept its deposits with said bank. On October 28, 1891, plaintiff delivered to defendants another

draft for the sum of $219.50, upon King & Montgomery, of Wilmington, North Carolina, with bill of lading attached. This draft was payable on arrival of the goods, and was to be transmitted, the same as the first mentioned draft, for collection in the usual course of business. On the same day the plaintiff delivered to the defendants another draft, payable on arrival of goods, drawn on J. M. Forshee, of the same place, for the sum of $219.50. This was also attached to bill of lading, and to be sent on for collection the same as the other. On the same day plaintiff delivered to the defendants another draft, with bill of lading attached, payable on arrival of goods, drawn on West & Co., of the same place, for the sum of $116, and also on the same day plaintiff delivered to the defendants another draft, with bill of lading attached, payable on arrival of goods, drawn on Fillyaw & Skulker, of the same place, for the sum of $69.60, the last two named drafts to be transmitted to Wilmington for collection, the same as the others. On the 30th of October of the same year plaintiff delivered to the defendants another draft on West & Co., of Wilmington, North Carolina, with bill of lading attached, payable on arrival of goods, for the sum of $108.50, and the same day plaintiff delivered to defendants another draft, with bill of lading attached, drawn on J. S. McEacher, all of the same place, for the sum of $108.50, both of these drafts to be collected in the usual course of business, as the others. And on the 4th of November of the same year plaintiff delivered to the defendants another draft, drawn on West & Co., of Wilmington, for the sum of $108.50, with bill of lading attached, payable on arrival of goods, same to be collected in usual course of business, as the other drafts named. No instructions were given by the plaintiff to defendants as to what bank or agency these drafts should be sent to in Wilmington, North Carolina. Defendants sent all of them, in due time and with due diligence, to the First National Bank

of Wilmington, North Carolina, with instructions to collect as in the draft directed, and to transmit the proceeds to the defendants. The First National Bank of Wilmington, North Carolina, was a responsible bank, in good standing, its solvency never having been called in question, and the defendants exercised due diligence in selecting that bank. It is further agreed that all the aforesaid drafts were collected by the First National Bank of Wilmington, North Carolina, to which they were sent, but that said bank, on or about the 25th of November, 1891, failed, and the proceeds were never remitted to defendants.

"On the 24th of November, 1891, defendants received from said First National Bank of Wilmington, North Carolina, two drafts upon the United States National Bank of the city of New York, one for the sum of $327.25 and the other for the sum of $613. On receipt of said drafts, the intelligence of the First National Bank failure not having reached the defendants, the amount represented by them, being $940.25, was placed to the credit of the plaintiff, paid to and has been retained by it, and the drafts themselves immediately forwarded to New York for collection and credit there, the defendants keeping an account there. The drafts were protested by the New York bank on receipt, and nothing realized from them.

"It is further agreed that on the 27th of May, 1893, plaintiff gave defendants a draft, with bill of lading attached, and drawn on B. F. King, of Wilmington, North Carolina, to be transmitted for collection in the usual course of business, without special instructions, same as the other drafts above mentioned, for $77.25, and on the same day plaintiff delivered to the defendants another draft, with bill of lading attached, payable on arrival of goods, drawn on McNair & Pearcell, of Wilmington, North Carolina, for collection, same as draft last mentioned, for the sum of $140.50. These last two drafts were promptly

forwarded to the Bank of New Hanover, of Wilmington, North Carolina, with instructions to collect as directed and remit the proceeds to the defendants. This bank was considered a suitable and safe agency, and the defendants are not charged with negligence in this selection. The bank was in good standing, so far as known. This bank afterwards, to-wit, about the 18th or 21st (from 15th to 21st) day of June, 1893, likewise failed, after having collected the two drafts, but before remitting the amounts as directed.

"Plaintiff makes no claim on account of drafts mentioned herein, other than those mentioned in the copy of account sued on, attached to the declaration herein, and the sum of $6.14 balance on the draft of August 21, 1891, and said other items and drafts as introduced by the defendants under the notice of set-off.

"It is further agreed that for some time previous, and terminating about 1890, it was the practice of the defendants, on receipt from the plaintiff of drafts for collection, to immediately credit the plaintiff with the amount of the draft, and then charge the plaintiff interest from date of giving it credit to the time defendants received the proceeds of the collection. About 1890 this practice was changed, the defendants receiving items for collection to credit the plaintiff with the proceeds when received, and that continued and was the practice at the time of receiving the drafts above mentioned.

"It is further agreed that on the failure of the banks at Wilmington, North Carolina, respectively, as above stated, the defendants filed affidavits with the respective receivers for the amount of the several drafts that had been collected and not remitted. Affidavits and forms of claim furnished by the receivers were made out and presented by the defendants in their own name, the drafts having been endorsed by the plaintiff to the defendants at the time they were respectively delivered to them to be transmitted for collection, as above stated. The de-

fendants have received as dividends on the drafts above mentioned, from the First National Bank of Wilmington, North Carolina, the sum of $625.92, and from the Bank of New Hanover nothing. The dividends, as above stated, have been retained by the defendants.

"It was not uncommon for delays to occur in payment of drafts sent on for collection in this way, caused by delay in the arrival of goods and from other causes, and there is no claim of negligence against the defendants on this account."

JOSH WILSON, and HARTZELL & SPRIGG, for appellant:

The ordinary relation existing between a bank and its depositors is that of debtor and creditor. *Johnson* v. *Wood*, 2 Ill. App. 263.

Banks can only avoid responsibility by limiting their liability by express agreement. *Fay & Co.* v. *Strawn*, 32 Ill. 295; *Drovers' Bank* v. *Packing Co.* 18 Ill. App. 139.

Where bills or checks are deposited with a bank for collection, the bank is an agent to collect, and not merely to transmit for collection, and is liable for the neglect of any of its agents, however proper the selection may have been. *Bank* v. *Albany City Bank*, 3 Seld. 459; *Reeves* v. *Bank*, 8 Ohio St. 465; *Allen* v. *Bank*, 22 Wend. 215; *Hoover* v. *Wise*, 1 Otto, 308; *Commercial Bank* v. *Bank*, 1 Kern. 203.

Where a bank received a draft for collection and sent it to its agent, who obtained the money on it, but, becoming embarrassed, failed to remit, the bank is liable for the amount received by its agent. *Bradstreet* v. *Everson*, 72 Pa. St. 124; *Mackay* v. *Ramsay*, 9 C. & F. 818.

The appellees, being chargeable with the receipt of the funds, by themselves or agents, by collection of the drafts, and having used the funds collected, are liable for the amount. *Bank* v. *Rushmore*, 28 Ill. 471; *Corbit* v. *Bank*, 2 Harr. 235; *Bank* v. *Benoist*, 10 Mo. 519; *Edwards* v. *Morris*, 1 and 2 Ohio, 241; *Bank* v. *Wister*, 2 Pet. 318.

Where a bank makes a collection for a customer, and holds the proceeds, which pass into the general funds of the bank, the relation of debtor and creditor arises, and not that of principal and agent, and all risk as to the funds is that of the bank.  Edwards on Bailments, p. 66; *Bank* v. *Hughes,* 17 Wend. 100; *Smedes* v. *Bank,* 20 Johns. 379; *Chapman* v. *White,* 2 Seld. 417; *Munn* v. *Burch,* 25 Ill. 35; *Matter of Franklin Bank,* 1 Paige, 249; *Bank* v. *Bank of Georgia,* 9 Wheat. 342; *Corbit* v. *Bank,* 2 Harr. 235; *Wray* v. *Insurance Co.* 34 Ala. 58; *In matter of Stafford,* 11 Barb. 354; *Bank* v. *Rushmore,* 28 Ill. 471.

While it may be said that the bank is the agent in receiving and transmitting the drafts to another bank for collection, yet when the agent collects and mingles the funds of its principal with its own, or uses them, it becomes a debtor to its principal.  *In matter of Stafford,* 11 Barb. 354; *Wren* v. *Kirton,* 11 Ves. Jr. 382; *Case* v. *Abeel,* 1 Paige, 402; Story on Agency, secs. 228, (note,) 229; *Bank* v. *Rushmore,* 28 Ill. 471.

If, at the time the holder hands in the check to the bank, he demands to have it placed to his credit, and is informed that it shall be done, or if he holds any other species of conversation which practically amounts to demanding and receiving a promise of a transfer of credit as equivalent to an actual payment, the effect will be the same as if he has received his money in cash, and the bank's indebtedness to him for the amount will be equally fixed and irrevocable.  Morse on Banking, 321; *Bank* v. *Buckhardt,* 10 Otto, 686; *Bank* v. *Gregg,* 138 Ill. 600.

Depositing money in a bank is a loan.  2 Chitty on Contracts, 278; Morse on Banking, 25, 26; *Comstock* v. *Gage,* 91 Ill. 338; *Bank* v. *Rushmore,* 28 id. 471.

If a holder of a bank check, instead of demanding payment, obtains its certification by the bank, he will thereby discharge the drawer of the check from all liability, and its presentment on the next business day after its issue,

and non-payment, will not in any manner revive the drawer's liability.    *Bank* v. *Jones*, 137 Ill. 634.

Banks sometimes charge a commission for collection, but the probable temporary use of the money when collected, and the advantages arising from business association, are a sufficient consideration for the undertaking to collect it.    *Smedes* v. *Bank*, 20 Johns. 372;    *Titus* v. *Bank*, 6 Vroom, 588; *Bank* v. *McKinster*, 11 Wend. 475; *Mechanics' Bank* v. *Bank*, 6 Metc. 13;    *Bank* v. *Rushmore*, 28 Ill. 471.

TRAVOUS & WARNOCK, for appellees:

Where a draft is left with a bank for collection, and is transmitted by it in due season to a suitable agent at the place of the residence of the drawee, with the necessary instructions, it thereby fully discharges its duty, and is not liable for loss accruing through negligence of the latter.    Mechem on Agency, sec. 514, p. 349; Morse on Banking, (2d ed.) 414; id. (3d ed.) chap. 17.

The rule as stated above is the law in this State. *Insurance Co.* v. *Bank*, 25 Ill. 243; *Drovers' Bank* v. *Provision Co.* 18 Ill. App. 191; 117 Ill. 100.    And in Massachusetts: —*Fabens* v. *Bank*, 23 Pick. 330.    And in Missouri:—*Daly* v. *Bank*, 56 Mo. 94:    And in Connecticut:—*Laurence* v. *Bank*, 6 Conn. 521.    And in Maryland:—*Bank* v. *Howell*, 8 Md. 530.    And in Wisconsin:—*Stacy* v. *Bank*, 12 Wis. 629. And in Iowa:—*Guelich* v. *Bank*, 56 Iowa, 434.    And in Mississippi:—*Bank* v. *Vicksburg Bank*, 61 Miss. 112.    And in Tennessee:—*Bank of Louisville* v. *Bank*, 8 Baxt. 101.    And in Louisiana:—*Hyde* v. *Bank*, 17 La. 560.    And in Pennsylvania:—*Bank* v. *Goodman*, 109 Pa. St. 422.    And in Colorado:—*Bank* v. *Burns*, 12 Col. 539.    And in Kansas:— *Bank* v. *Ober*, 31 Kan. 599.    And in Nebraska:—*Bank* v. *Sprague*, 34 Neb. 318.

Even the courts which hold the bank receiving paper for collection liable for the negligence of its corresponding bank, do not so hold in cases like the present, where the undertaking is to "transmit for collection."    1 Daniel

on Neg. Inst. sec. 345; *Bank* v. *Burns*, 12 Col. 539; *Bank* v. *Triplet*, 1 Pet. 28; *Exchange Bank* v. *Bank*, 112 U. S. 275; *Bank* v. *Owens*, 5 Cranch C. C. 504.

Appellees, having discharged their full duty in the premises, were entitled to recover from appellant the money paid them upon the drafts received from appellant's agent, which proved worthless, less the amount afterward received from the receiver. *Drovers' Bank* v. *Provision Co.* 117 Ill. 100; *Bank* v. *Cummings*, 89 Tenn. 609; *Rapp* v. *Bank*, 136 Pa. St. 426; *Bank* v. *Owens*, 5 Cranch. C. C. 504.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The controlling question in this case is, whether the First National Bank and the Bank of New Hanover, of Wilmington, North Carolina, to which the defendants transmitted the drafts in question for collection, were, in making the collections and remitting the money, the agents of the defendants or of the plaintiff. It appears from the stipulation of the parties that the drafts were delivered by the plaintiff to the defendants with bills of lading attached, to be transmitted by the defendants to Wilmington for collection. No instructions were given by the plaintiff to the defendants as to the bank or agency in Wilmington to which the drafts should be sent, and all were sent in due time and with due diligence to these banks, all but the last two being sent to the First National Bank, and those two to the Bank of New Hanover. At the time the drafts were sent to these banks, respectively, the banks were each responsible and in good standing, their solvency then never having been called in question, and it is admitted that the defendants used due diligence in selecting these banks as the agencies for collecting the drafts and remitting the money. The drafts were all paid to the Wilmington banks in due course of business, but before the money collected was remitted to the defendants both banks failed, and the money, with

the exception of certain sums paid over by the receiver of the First National Bank of Wilmington, was never received by either the defendants or the plaintiff.

Where a draft upon a non-resident drawee is deposited with a local bank for collection, and especially where, as in this case, it is deposited to be transmitted to the place of residence of the drawee for collection, the bank fully discharges its duty by transmitting the draft, in due season, to a suitable agent at the place of residence of the drawee, with necessary instructions, and it is not liable for loss occasioned by the negligence or default of the collecting agent thus employed. Such collecting agent becomes the agent of the holder of the draft, and not of the bank with which it is deposited for collection. While some of the courts have been disposed to hold the bank in such cases to a higher degree of responsibility, the better reasoning, as well as the weight of authority, seems to support the rule as we have stated it, and that rule has long been recognized and adopted in this State.

In *Allen* v. *Merchants' Bank*, 22 Wend. 215, the stricter rule is held, but in a note to that case as it is reported in 34 Am. Dec. 315, by Mr. Freeman, it is said: "The preponderance is against the principal case, and in favor of the rule that the liability of a bank taking a note or bill for collection which is payable at a distance, extends merely to the selection of a suitable and competent agent at the place of payment and to the transmission of the paper to such agent, with proper instructions, and that the corresponding bank is the agent, not of the transmitting bank, but of the holder, so that the transmitting bank is not liable for the default of the correspondent, where due care has been used in selecting the correspondent." The foregoing statement of the rule by Mr. Freeman is quoted with approval in *First Nat. Bank* v. *Sprague*, 34 Neb. 318, and the rule itself is adopted.

In *Guelich* v. *National State Bank*, 56 Iowa, 434, the reasons of the rule are stated as follows: "The course of

business of defendant and all other banks is, in such
cases, to make collections through their correspondents.
They do not undertake themselves to collect the bills,
but to indorse them to other banks at the place where
payment is to be made.   The holder of the paper, having
full notice of the course of business, must be held to
assent thereto.   He therefore authorizes the bank with
whom he deals to do the work of collection through
another bank.   The bank receiving the paper becomes
the agent of the depositor, with authority to employ
another bank to collect it.   The second bank becomes
the sub-agent of the customer of the first, for the reason
that the customer authorizes the employment of such an
agent to make the collection.   The paper remains the
property of the customer, and is collected for him.   The
party employed, with his assent, to make the collection,
must therefore be regarded as his agent."

In *Daly* v. *Butchers' and Drovers' Bank*, 56 Mo. 94, the
plaintiff was a depositor in the defendant's bank, and
deposited therein certain drafts in controversy in that
case.   The drafts were sent by the defendant to the Na-
tional Bank of Vicksburg, which the defendant believed
trustworthy, with directions to collect and remit.   The
Vicksburg bank collected the money and kept it, and
became insolvent, and it was held that the defendant was
not liable for the loss.

The foregoing cases are entirely in harmony with the
decision of this court in *Ætna Ins. Co.* v. *Alton City Bank*,
25 Ill. 221, in which it was held, that where a bill or note
is received by a bank for collection which renders its
transmission to another place necessary, the bank dis-
charges its duty by sending it in due season to a com-
petent, reliable agent, with proper instructions for its
collection.   There the legal holder of the bill indorsed
and delivered it to the defendant bank for collection in
the usual and regular course of banking business, and
the defendant bank on the same day indorsed and trans-

mitted it for collection to certain bankers in St. Louis, Missouri, the proceeds of the bill, when collected, to be placed to the credit of the Alton bank. By the negligence of the correspondent bankers in failing to have the bill protested for non-acceptance and to give notice of non-acceptance, the amount of the bill was lost, and it was held that the defendant bank was not liable. In discussing the case the court said (p. 224): "This presents the question whether the bank receiving such paper for collection is bound for the acts of their correspondents and are responsible for their negligence, or whether their undertaking requires anything more than that they should use reasonable care and prudence in the selection of a responsible correspondent to whom it shall be intrusted. That a bank receiving such paper for that purpose in the usual course of business is bound to use ordinary and reasonable care in selecting an agent competent and responsible, there is no doubt, and a want of such precaution would clearly render it liable for consequent loss. It does not appear that there was any agreement on the part of the bank to become liable, at all events, for any loss that might occur from the acts of their correspondents, and the law has imposed no such liability." See, also, *Drovers' Nat. Bank* v. *Provision Co.* 117 Ill. 100; *Fabens* v. *Mercantile Bank,* 23 Pick. 332; *Stacy* v. *Dane County Bank,* 12 Wis. 629; *Citizens' Bank* v. *Howell,* 8 Md. 530; *Laurence* v. *Stonington Bank,* 6 Conn. 521; *Third Nat. Bank* v. *Vicksburg Bank,* 61 Miss. 112; *Bank of Louisville* v. *First Nat. Bank of Knoxville,* 8 Baxt. 101; *Merchants' Nat. Bank* v. *Goodman,* 109 Pa. St. 422; *Hyde* v. *Planters' Bank,* 17 La. Ann. 560; *German Nat. Bank* v. *Burns,* 12 Col. 539; *Bank of Lindsborg* v. *Ober,* 31 Kan. 599; Mechem on Agency, sec. 514.

In the light of these authorities it must be held that the First National Bank and the Bank of New Hanover, of Wilmington, North Carolina, were the agents of the plaintiff, and not of the defendants, and that the losses

resulting from their default must be borne by the plaintiff, and not by the defendants.

It appears, however, that on the 24th day of November, 1891, the First National Bank of Wilmington, after collecting the drafts forwarded to it, remitted to the defendants two drafts on the United States National Bank of the city of New York, aggregating $940.25, and failed and became insolvent the day following; that the defendants, on receipt of the drafts, not having received intelligence of the failure of the drawer, placed the amount of the drafts to the credit of the plaintiff and paid the same over to it, and that the money so paid has been retained by it; that the drafts themselves were immediately forwarded to New York for collection, and were there dishonored and protested, and that nothing was realized from them; that the defendants subsequently proved up their claim for the amount of the two drafts before the receiver of the First National Bank of Wilmington, and afterwards obtained from the receiver, by way of dividends on their claim, the sum of $625.92. They now claim, and have been permitted to recover by way of set-off, the difference between the amount of the dividends so received and the face of the drafts. This we think was proper. If the plaintiff had itself deposited these drafts with the defendants and received payment of their amount, the drafts being at the time worthless by reason of the insolvency of the drawer, there can be no doubt that the defendants would have had the right to charge back and recover the amount of the loss from the plaintiff. They were in fact received by the defendants from the First National Bank of Wilmington, which, for all the purposes of the transactions under consideration, is to be regarded as the plaintiff's agent. The rights of the defendants would therefore seem to be the same as though the plaintiff had itself deposited the drafts with the defendants.

Nor are we able to see that the case is at all affected by the circumstance that the defendants retained the drafts and proved up a claim for their amount before the receiver in their own name. They had paid the amount of the drafts to the plaintiff, and until the money so paid was refunded to them they were entitled to hold the drafts, and collect in their own name and for their own benefit whatever could be collected from the estate of the insolvent drawer, of course crediting whatever they might be able to collect upon their claim against the plaintiff.

We are of the opinion that the judgment is fully warranted by the facts appearing by the stipulation of the parties, and the judgment of the Appellate Court will therefore be affirmed.          *Judgment affirmed.*