## JOHN D. BOWLING v. ALEXANDER H. ARTHUR.

1. BILLS AND NOTES: NOTICE: WHEN SERVED THROUGH POST-OFFICE.—Where the indorser resides in the same town in which a bill or note is payable, notice of its dishonor should be given to him personally, or left at his dwelling-house, or usual place of business; notice sent through the post-office will not do, unless he has agreed to receive notice in that mode. See *Bowling* v. *Harrisson*, 6 How. U. S. R. 248.

2. PRINCIPAL: AGENT: NOTARY PUBLIC: LIABILITY FOR FAILURE TO GIVE NOTICE. —It is well settled in this State that a bank receiving commercial paper as agent for collection, properly discharges its duty, in case of non-payment, by placing the paper in the hands of a notary public, to be proceeded with in such manner as to charge the parties to it, and secure the rights of the owner; and that the bank is not liable for the failure of the notary public to discharge his duty; in such a case the notary public is the sub-agent of the holder, and is

responsible directly to him.  See *Tiernan* v. *Com. Bank of Natchez*, 7 How.
(Miss.) 648;  *Com. Bank of Manchester* v. *Agricultural Bank*, 7 S. & M. 592.
3. PROMISSORY NOTES: ARE PROTESTABLE BY OUR STATUTE: DUTY OF NOTARY AS
TO GIVING NOTICE.—By the rules of the commercial law, a promissory note is
not protestable paper, and it is not the duty of a notary public, who presents it
for payment, to give notice of its dishonor to any party except the one from
whom he received it.  But by the Act of 1833 (Hutch. Dig. p. 868), the power
of a notary public to make protest of a promissory note is plainly recognized;
and, in case of the protest of such paper, the duty is clearly enjoined on him
to give such notice, or notices, as are requisite and necessary to charge all the
parties sought to be made liable, and who are by law entitled to notice.
4. SAME.—Where a notary public undertakes to give notice to an indorser on a
promissory note, and charges, and receives compensation therefor, from the
holder, he is bound to give due and legal notice, and upon his failure to do so,
he is liable for the damages occasioned by his negligence.

IN error from the Circuit Court of Warren county.  Hon. John
I. Guion, judge.

In the year 1843, the plaintiff in error brought this action of
*assumpsit* against the defendant in error, to recover damages for
the failure of the defendant in error to give legal notice of the dis-
honor of a promissory note placed in his hands by the plaintiff in
error, for collection, and for demanding payment and giving notice
of non-payment to the maker and indorsers thereof, and by which
failure, J. P. Harrisson, one of the indorsers, was released from
liability, and the other parties being insolvent, the plaintiff lost his
debt.

The defendant pleaded the general issue and the Statute of Limi-
tations of three years.  To the last plea the plaintiff's demurrer
was sustained, and the defendant, failing to plead over, the cause
was tried at the November term, A. D. 1852, of the Circuit Court
of Warren county, before the Hon. Richard Barnett, and a verdict
was rendered for the plaintiff for $

The defendant moved for a new trial, which was granted.  The
plaintiff filed his bill of exceptions, embodying all the evidence
introduced, and the instruction given and refused by the court.

A trial was again had at the May term, A. D. 1854, when a ver-
dict was rendered for the defendant; thereupon, the plaintiff moved
for a new trial, which being refused, he again tendered his bill of
exceptions as before, and sued out this writ of error.

The material facts, as they appeared on the first trial, were in substance as follows:—

One A. G. Creath, on the 26th day of November, A.D. 1836, made his promissory note for $5808, due two years after date, and payable to the order of W. M. Pinkard, at the Planters' Bank at Vicksburg. This note was indorsed by W. M. Pinkard to Pinkard & Payne, and by them to J. P. Harrisson, and by Harrisson to the plaintiff, who being at that time a resident of the State of Maryland, indorsed it for collection to the Bank of the Metropolis in Washington city. The cashier of that bank indorsed it to the cashier of the Planters' Bank at Natchez, and sent it to him for collection, who, upon its reception, indorsed it to the cashier of the Branch of the Planters' Bank at Vicksburg, where it was payable, to whom also he sent it for collection. The maker having failed to provide funds to meet the note, it was delivered to the defendant (who was a notary public, having his office in the bank, and nominated by the directors, and duly commissioned as such, under the provisions of the charter of the bank), for the purpose of demanding payment and making protest of the same. Upon the day when the note became due and payable, the defendant made a demand of payment, and which being refused he protested it for non-payment, and deposited written notices thereof in the post-office at Vicksburg; one directed to the cashier of the Planters' Bank at Natchez, and one directed to the indorser, J. P. Harrisson, at Vicksburg. The defendant on the same day delivered the note and protest to the bank at Vicksburg, who by the next mail transmitted them to the bank at Natchez, by whom they were mailed on the day after their reception to the Bank of the Metropolis at Washington city. The following memorandum was on the note, in the handwriting of J. P. Harrisson: "3d indorser, J. P. Harrisson, lives at Vicksburg."

It was also shown that the plaintiff had instituted an action on the note in the Circuit Court of the United States, held at Jackson, in this State, against J. P. Harrisson, on which a judgment was rendered against him, because the notice had been illegally given to said indorser through the post-office, as before stated. This judgment was afterwards affirmed in the Supreme Court of the United States, and the case is reported in 6 How. U. S. R., p. 248.

On the trial of this cause, the defendant was examined as a witness for the plaintiff, to fix the liability of Harrisson, and his testimony on that trial was proven, by W. A. Lake, Esq., one of the counsel therein for plaintiff, to be in substance as follows: That the memorandum on the note, " 3d indorser, J. P. Harrisson, lives at Vicksburg," was in the handwriting of said Harrisson; that the said note was deposited in the office of the Planters' Bank at Vicksburg, Mississippi, on the 29th day of November, A. D. 1838, for collection; and that, on the same day, he demanded payment thereof of the teller of said bank, who refused to pay the same. That, on the same day, he deposited in the post-office, at Vicksburg, a written notice of the non-payment of the said note, directed to said J. P. Harrisson, informing him of the non-payment of said note; that he acted as the agent of the Planters' Bank in making demand of payment, and giving notice of non-payment of said note; that J. P. Harrisson lived at that time in the town of Vicksburg; that, for several years prior to the maturity of said note, it was the usage of the Planters' Bank at Vicksburg to have notices served personally upon the indorsers resident in that city, unless there was a memorandum on the note appointing some other place at which notice would be received; and, if there were such memorandum, then notice was left at the place so designated; that this usage applied to notes which were discounted by the bank, and also to notes left there for collection. The language of these agreements was usually as follows: " 1st indorser will receive notice at Vicksburg post-office," &c., though sometimes they were in the language of the memorandum on the note sued on; that the witness seeing the defendant's name written at the foot of the note, he supposed it to be an agreement on his part to receive notice through the post-office, and he accordingly gave him notice through that medium; that he gave no other notice of the non-payment of the note to the defendant, Harrisson."

It was also shown that all the other parties to the note were insolvent in the years 1838 and 1839, and that J. P. Harrisson was then solvent, and has so continued up to the date of the trial. Upon the back of the protest was indorsed, in the handwriting of Arthur, " Protest fees, $5 00;" and it was shown, by a person who had acted as a notary public in Vicksburg in the years 1838

Bowling v. Arthur.

and 1839, that the regular fee for the protest was $1 00, and that fifty cents was charged for each notice served; that at these rates $5 00 was the proper charge for the protest and for serving notices on each of the indorsers on the note. It was further shown that the fees thus charged were paid by the bank to Arthur, and refunded to the bank by the plaintiff.

*W. Yerger*, for the plaintiff in error.

Where an indorser lives in the same town in which a note is payable, notice given to him through the post-office of non-payment and protest will not be sufficient to charge him, unless he agreed to receive notice in that way. *Patrick* v. *Beasley*, 6 How. Miss. R. 609; *Bowling* v. *Arthur*, 6 How. U. S. R. 248.

Where a bank with whom a party does business, or at which a note is payable, has a particular usage or custom by which it transacts that particular business, a party receiving a note payable there, or transacting such business with the bank, will be held bound by such usage, whether he actually knew of it or not, and will be held to have dealt with the bank on the agreement that the usage made a part of his contract. 6 Cowen R. 310; 1 How. U. S. R. 234; 15 Wend. 486; 9 Wheaton R. 195; 11 Ib. 431; 1 Peters R. 25.

A bank which receives a note for collection and places it in the hands of a notary in time for demand and protest, is not liable for any loss on account of the negligence of the notary in failing to give notice as required by law. 7 S. & M. 592; 7 How. Miss. R. 649; 15 Wend. 486; 10 Eng. C. L. 145; 23 Pick. 332; 1 Cushing R. 177; 4 Robinson La. R. 109; 1 Peters R. 25; 17 Louisiana R. 563; 12 Conn. R. 303.

Where an authority may be implied from the usage of trade or the nature of the transaction, or there is an express agreement of the parties that a sub-agent is to be employed, there a privity is deemed to exist between the principal and sub-agent, and the latter may be held responsible to the real principal for a failure to discharge his duties as agent. Story on Agency, sec. 386, 387, et seq.; Ib. sec. 217, 313; 1 Strange R. 681; 3 How. U. S. R. 763; 2 Bos. & P. 438; 2 W. & S. 301; 1 Wash. C. C. R. 479; 15 Wend. 486; 23 Pick. R. 332; 1 Cushing R. 177; 3 Hill's N.

Y. R. 560; 4 Robinson (La.) R. 109; 1 Peters R. 25; 17 Louisiana R. 563; 1 La. Annual R. 13.

Where a party charges another for the performance of a particular piece of work, it is a circumstance from which the jury may legitimately infer that he agreed and undertook to do the work for which he has charged. Starkie on Ev. 499; 2 Watts & S. 345; 10 Eng. C. L. R. 145; 4 Rawle, 392.

Where a note is deposited in a bank for collection, there is an implied undertaking on the part of the bank, in case the note is not paid, to give notice of the refusal of the maker to all the indorsers. *Bank of Utica* v. *Smedes*, 20 Johns. 371; 3 Cow. 663; 9 Wend. 46; S. C. 11 Wend. 473; 6 How. U. S. R. 248; 15 Wend. 486.

This rule applies fully to the case of a notary in Mississippi, who receives a note for collection.

If the usage of the bank was to give notice to all the indorsers on collection paper, and it charged for so doing, a notary undertaking to act for the bank is bound to conform to this usage, and is liable for loss occasioned by his failure to do so.

Notice to Harrisson through the post-office is not good, although Bowling, the owner of the paper, resided in Maryland and not in Vicksburg. 6 How. U. S. R. 256.

If Bowling had given notice to Harrisson after he was discharged, it is not good, although it appeared that defendant, in case successive notices had been given by all the parties on the bill, could not have received notice of the dishonor at an earlier period. 6 Eng. C. L. R. 484.

An agent receiving a bill or note for collection is liable, if chargeable with negligence, for all damages sustained by the owner, and the measure of damages is *prima facie* the amount of the bill, though the defendant may show circumstances to mitigate the damages, or reduce it to a nominal amount. 17 Wend. 368; 20 Ib. 321.

Where a bank receives a note for collection, and the maker of the note resides in another place, it is understood that the bank so receiving it only undertakes to forward it for collection to the residence of the maker; and when so transmitted to a solvent bank in

good standing, it is not liable for the misfeasance or negligence of that bank. 23 Pick. R. 332.

The usage of a bank or general usage may resemble the general law merchant in reference to protest, maturity, &c., of bills and notes. 2 How. U. S. R. 66 ; 6 Cowen R. 310 ; 1 How. U. S. R. 234.

And although it is by the general law merchant no part of a notary's duty to give notice to the indorsers, he may be held liable to do so by a State law or general usage. 2 How. U. S. R. 66. On the power, duties, &c., of notaries, see 3 S. & M. 389, and statutes there cited.

The notary, who has possession of a note for demand and collection, is held to be the "*holder*," for the purpose of giving notice, when it is requisite to give notice in person or by mail. *Bowling* v. *Arthur*, 6 How. U. S. R. 248 ; 3 Kent, 139, last ed. note 2.

Where a party undertakes to perform any service for another, whether gratuitously or otherwise, the confidence placed in him that he will perform it, is a sufficient consideration to create a duty in the performance of it. *Coggs* v. *Bernard*, and cases cited ; 1 Smith's Leading Cases, 95.

Again, for what purpose was the note in controversy placed in Arthur's hands ? Certainly not for the mere purpose of making demand, for that could have been done as well by the teller or any other bank officer as by a notary ; and in fact, as the note was payable in the bank, and was deposited there for collection, and remained there on the day of its maturity, no special demand was necessary. Then, why was it placed in the hands of the notary ? Certainly not to protest it; for a protest is not necessary to fix the liability of any party to a promissory note, nor did the protest add anything of value to the paper. Then why was it placed in the hands of the notary ? The answer to this question seems obvious. It was, that the notary might make demand, and give notice to all the parties to the paper, according to the usual practice of the bank and the general custom of notaries in this State, in order that there might be a disinterested witness of the facts, in the event of its being necessary to prove them. A notary was selected to do this, because he usually attended to this kind of business, was a public officer who by law was required to keep a record of his acts,

and whose records, or a copy of whose records, were made evidence by law, of all the acts done by him in the premises as notary, and could be used at any time, when needed, during the life or after the decease of the notary. 17 Louisiana R. 563. That this was the purpose for which the note was put in Arthur's hands is proven, 1st, by the fact, that such is the purpose for which promissory notes are usually placed in the hands of a notary; 2dly, by the fact that Arthur attempted to perform this duty; 3dly, that he charged and was paid for the performance of it. Thus clearly showing the purpose for which he received it, and the undertaking on his part to perform it.

Arthur, though nominated by the bank, was a public notary. See Acts of 1831, page 62.

Notaries still exist in this State. See *Dennistoun* v. *Potts*, 4 Cushman's R. 13.

*Fulton Anderson*, for the defendant in error.

Conceding, for the present, that Arthur did not comply with his duty in giving the notice required, yet it is clear that he is not liable to the plaintiff. Before his liability can be established, it must be shown that he was the agent of Bowling for the purpose of giving notice, otherwise there would be no privity between them, and his failure to discharge his duty would be no breach of a contract with the plaintiff, upon which he would be entitled to an action. The bank was the agent of the plaintiff, and as such was bound to demand payment and give notice; and if the bank, instead of performing this duty, employed a sub-agent, this would not release her from liability, and the sub-agent would be alone responsible to the bank, which in this case was his principal. See Story on Agency, § 13, 15, 201, 217 a, 386, 387, 388; *Milligen* v. *Wedge*, 40 Eng. C. L. R. 177; 6 Taunton, 149; *Satly* v. *Rathborne*, 2 Maule & Selwyn, 298; *Stephens* v. *Babcock*, 23 Eng. C. L. R. 93; *Commercial Bank of N. O.* v. *Master*, 1 La. Annual R. 344. Nor is it any answer to the above that the defendant was a necessary agent to be employed on account of his peculiar professional skill, for it was not necessary to protest the note; nor is there any usage shown by which it might be inferred that the bank was authorized by the plaintiff to employ a notary.

2. But it is clear that neither the bank nor the notary were required by the general principles of commercial law to give notice to Harrisson. The sole duty of the bank in this respect was to give due notice to the last indorser. This was done. Each indorser having a day after the reception of notice in which to notify prior indorsers, it was the duty of Bowling, if he intended to hold Harrisson liable, to have sent notice to him by mail when he received the notice from the Bank of the Metropolis. If the paper required protest, the bank was bound to employ a notary to make the protest, and it must have been the duty of the notary to have given due notice to the bank from which he received it; but here Arthur did more: he also gave notice to the immediate indorser of that bank. See Bailey on Bills, pp. 250, 263, 264, 267; *Haynes* v. *Birk*, 1 Bos. & Pul. 599; *Colt* v. *Noble*, 5 Mass. 167; 5 Cow. 303; *Phipps* v. *Milbury Bank*, 8 Metcalf, 79; *U. S. Bank* v. *Goddard*, 5 Mason C. C. R. 366; *Ellis* v. *Commercial Bank*, 7 How. 303; 2 Johns. Cases, 1; *Mechanics' Bank* v. *Merchants' Bank*, 6 Metcalf, 13; *Scott* v. *Lifford*, 9 East, 347; *Langdale* v. *Trimmer*, 15 East, 291; *State Bank of Elizabeth* v. *Ayers*, 2 Halsted R. 130. And this rule equally applies where the indorsements are merely nominal for collection. Story on Bills, p. 323; *Farmers' Bank* v. *Tiernan*, 2 Littell R. 18; *Van Wurt* v. *Smith*, 1 Wend. 219; *Sewall* v. *Russell*, 3 Ib. 276; *Howard* v. *Ives*, 1 Hill, 263; 9 Pick. 347.

3. As a notary public, it was no part of Arthur's official duty to give notice to the indorsers, or even to protest the note. *Morgan* v. *Van Ingen*, 2 Johns. R. 204; *Burke* v. *McKay*, 2 How. U. S. R. 66; *Young* v. *Bryan*, 6 Wheat. 146.

Mr. Anderson also reviewed the authorities cited on the other side, and contended that they did not sustain the position that Mr. Arthur was liable.

HANDY, J., delivered the opinion of the court.

This was an action of *assumpsit*, brought by the plaintiff in error, against the defendant in error, to recover damages for a failure of duty on the part of the defendant, in giving notice of the nonpayment of a promissory note, placed in his hands for the purpose of demanding payment and giving notice of non-payment to an

VOL. V.—4

indorser upon the paper, in consequence of which, that indorser was discharged, and the plaintiff lost his debt.

The material facts appear to be, that the plaintiff was the holder of the note in question, which was made by one Creath, and payable two years after its date, at the office of the Planters' Bank, at Vicksburg, to the order of one Pinkard, who indorsed it to Pinkard and Payne, who indorsed it to J. P. Harrisson, who indorsed it to the plaintiff. Before the maturity of the note, it was indorsed by the plaintiff, and delivered to the Bank of the Metropolis, in the District of Columbia, as his agent for collection—the plaintiff residing in the State of Maryland—and that bank indorsed and transmitted it to the Planters' Bank, of the State of Mississippi, at Natchez, for collection, by whom it was also indorsed, and transmitted to the branch of that bank at Vicksburg, where it was payable, for collection. There was upon the note a written memorandum, in the handwriting of the indorser, J. P. Harrisson, as follows: "3d indorser, J. P. Harrisson, lives at Vicksburg." At its maturity, on the 29th November, 1838, it was placed by the branch bank, at Vicksburg, in the hands of the defendant, then a notary public of this State, appointed upon the nomination of that bank, under a statute authorizing such nomination by the bank, for the purpose of having demand of payment made; and on the same day he made due demand of payment at the bank, and payment was refused; and thereupon he protested the note on that day, and on the same day gave notice to the indorser, J. P. Harrisson, of its dishonor, by a written notice, addressed to him, and deposited in the post-office at Vicksburg, in which town said Harrisson resided at the time. He also gave notice of its non-payment, by the post-office, on the same day, to the cashier of the Planters' Bank of Natchez, and returned the note, with a protest attached, to the bank at Vicksburg, who also returned the same to the bank at Natchez, in due course of mail, and the same were returned by that bank to the Bank of the Metropolis, who paid the fees, for protest and notice, charged by the notary for his services. Afterwards, a suit was brought in the Circuit Court of the United States, in this State, by the plaintiff, against the indorser, Harrison, upon the note, and in that action a judgment was rendered for the defendant, on the ground that it appeared that the notice given by

the notary to that indorser, through the post-office, was insufficient—he being then a resident of the town of Vicksburg—which judgment was affirmed by the Supreme Court of the United States. It appears that the notary was examined as a witness in that action: that for several years prior to the maturity of the note, it had been the usage of the Planters' Bank of Vicksburg to have notices served personally upon the indorsers resident in that town, unless there was a memorandum upon the note, appointing some place at which notice would be received; that he gave notice to Harrisson through the post-office, because he supposed the memorandum above mentioned and signed by him, to be an agreement to receive notice in that way, and that he gave him no other notice. It further appeared that the defendant had his office in the bank at Vicksburg, and performed notarial business for that bank; that he charged fees as upon a protest, and for notices to all the indorsers upon the note, and that it was the practice of the bank to pay the fees, upon such paper received by her for collection, for protest and notices.

The case was first tried at November term, 1852, and a verdict returned for the plaintiff; which, upon motion of the defendant, was set aside, and a new trial awarded. To this the plaintiff took his bill of exceptions, setting out all the evidence and rulings of the court upon the trial. A new trial was had, at the May term, 1854, which resulted in a verdict for the defendant. The plaintiff moved for a new trial, which was denied, and to which he excepted, setting forth all the evidence and proceedings upon the trial; and now brings the case here by writ of error.

Numerous instructions were given and refused at the instance of both parties on each of the trials. These instructions present the points of controversy; and, although they are numerous and much in detail with reference to the facts and different aspects of the case, the questions upon which the case depends are few, and involved in but little difficulty. We will, therefore, without examining the instructions in detail, consider such points arising in the case as are decisive of its merits. In doing this, it will only be necessary to consider the case as it is presented, upon the exception taken to the action of the court in setting aside the first verdict and awarding a new trial, the instructions granted and refused, being the same presented to the court on both trials.

It is conceded that, if it was the duty either of the Planters' Bank at Vicksburg, or of the defendant, to give notice of the non-payment of the note to Harrisson, the notice which was given to him through the post-office at Vicksburg, he being a resident of that town at the time, was not sufficient in law to charge him.

The first question, then, which arises is, whether the plaintiff's remedy was against the bank, and not against the defendant.

It appears that the bank received the note as agent for the plaintiff for collection, it being payable at the bank; and, it not being paid at maturity, it was then placed in the hands of the defendant by the bank, for the purpose of demanding payment and of giving notice of its dishonor. It is now insisted that it was the duty of the bank, as agent for collection, to give the notices required by law; and, for failure to perform that duty, that she is liable to the plaintiff; and, if there is any liability on the part of the defendant, that it is to the bank, and not to the plaintiff. But this is not an open question in this court. It is settled that a bank receiving commercial paper, as agent for collection, properly discharges its duty, in case of non-payment, by placing the paper in the hands of a notary public, to be proceeded with in such manner as to charge the parties to it, and secure the rights of the real owner; and that the bank is not liable in such case for the failure of the notary to perform his duty. *Tiernan* v. *Commercial Bank of Natchez*, 7 How. Miss. 648; *Commercial Bank of Manchester* v. *Agricultural Bank*, 7 S. & M. 592. These cases hold that the notary is the sub-agent of the holder, through the bank, and as such is liable to the holder; and we are satisfied that the rule declared in those cases is correct.

The next question is, whether it was the duty of the defendant to give notice to Harrisson of the non-payment of the note, or whether he was bound to give notice to any party; and, if he was, whether that duty was not properly performed by giving notice to the bank at Vicksburg, from whence he had received it, or the Planters' Bank at Natchez, the last indorser. It is admitted, on the part of the defendant, and the evidence fully shows, that the note was placed in his hands as a notary public, and that he undertook to act in that capacity in the matter. And it is insisted, that the giving of notice to any of the parties was no part of his official

duty as notary, because, by the rules of the commercial law, a promissory note is not protestable paper, and, even if it was, that it was not the duty of the notary, protesting paper, to give notice of dishonor to any party, except the one from whom he received it. This position is, no doubt, under the general rule of the commercial law, correct. But the duties of these officers are materially altered and enlarged by our statute law in relation to them, and the practice and usage which have grown up under it, and have received the sanction of our courts.

The Act of 1833, Hutch. Code, 868, plainly recognizes the power of notaries public to make protest of promissory notes, as well as of bills of exchange; and makes it the duty of such officer, when he shall protest any such instrument, "to make and certify, on oath, a full and true record of what shall have been done thereon by him in relation thereto, according to the facts, by noting thereon whether demand for the sum of money mentioned in the same was made, of whom, and where; when the requisite notice, or notices, were served, and on whom; where the same were mailed, if such be the case, when mailed, to whom, and where directed; and every other fact, in any manner touching the same, shall be distinctly and plainly set forth in his notarial record; and, when so made out and certified, it shall have the same validity, force, and effect, in all courts of record within this State, as if the said notary were personally present and interrogated in court." And he is made liable to a prosecution for perjury for making a false record in any such case.

It is too clear to admit of controversy, that under the provisions of this statute, notaries were empowered to demand payment of promissory notes, and to give the requisite notices, to charge parties sought to be rendered liable, as official acts.

The want of such power under the rules of the commercial law proceeded entirely from general commercial usage, and because the practice had not been adapted, as a part of that usage, to employ notaries to make protests and to give notices in cases of non-payment of promissory notes. For purposes of commercial convenience, and in order to secure the rights of holders of such paper, by providing a durable and available mode of proof of facts necessary to establish the liability of parties entitled to notice, before they

could be charged, the legislature thought fit to authorize notaries to perform such acts, and to make a record thereof for the benefit of the parties interested, thereby both enlarging their powers and creating a new mode of proof. Nor will it do to confine the power thus conferred to the duty of giving notice to the last indorser. There is nothing in the language to justify this restricted interpretation. The notary is authorized to give the "*requisite* notice or notices," upon protest of promissory notes. This is a new power given to him, as we have above seen, giving rise to a new duty; and, therefore, the term "requisite" cannot be understood to refer to any notice which it was his duty to give under the old rule. It must refer, then, to something further which was required to be done by him; and it appears to be clear that the objects of the statute, as above stated, show that he was authorized and required to give such notice or notices, as should be necessary *to charge all the parties who were sought to be made liable* upon the paper, and whose liability was dependent upon notice. This construction appears to be well sustained by the general language of the statute, and has been sanctioned by this court in *Tiernan* v. *Commercial Bank of Natchez*, and we think by very general, if not universal, usage under it; and we are satisfied, after much consideration, that this is the correct view of the statute. It establishes a rule of practice which, while it is highly beneficial and convenient to holders of commercial paper, in providing a means of giving notice to parties sought to be charged thereon, and a ready mode of proof necessary to that end, is beneficial to indorsers and parties secondarily liable by giving them immediate notice of the dishonor of the paper, and enabling them to protect themselves by early recourse upon prior parties.

But if we give a more restricted interpretation to the statute, and say that by the term "requisite" the power was merely conferred to give notices, to such person or persons as he should be thereto required by the holder or his agent, the result will be the same as to the delinquency of the defendant in this case, under any just view of the evidence. It appears that he was in intimate connection with the bank from whom he received the note, and the agent of the plaintiff, and that he undertook to give notice to Harrisson, and received fees for the service. Even if it was not his duty,

without being required, to do so, clearly he had the power to do the act if required; and it is therefore but a just and reasonable presumption, that he was required to do so by the bank. Under such circumstances, he could not be heard to say that the notice was not "requisite."

Having, therefore, the power to do the act, being required to do it, and having undertaken to do it, and received compensation for it, the plaintiff had the right to rely upon its being rightly done, and the defendant would be liable for his delinquency whether the duty was imposed upon him by the statute, or arose from his undertaking to give the notice as required by the plaintiff or his agent. For he unquestionably had the power to give the notice. And it appears that the plaintiff did rely upon the notice given by the defendant; for he sued Harrisson in faith of that notice, and failed.

It appears by the evidence that the other parties to the note were insolvent, and that by reason of the failure of the defendant to give due and legal notice to Harrisson, he was discharged from liability, and thereby the plaintiff has lost his debt. The instructions given by the court to the jury upon the first trial were substantially in accordance with the views which we have above stated, and the evidence was fully sufficient to sustain the verdict. If there be errors in the instructions, they are not to the prejudice of the defendant; and we are therefore of opinion that the court erred in setting aside that verdict and in granting the new trial.

That judgment, as well as the final judgment in the case, must be reversed, and a judgment on the first verdict be rendered for the plaintiff in this court.

Messrs. *Yerger* and *Anderson* filed a petition for a re-argument, upon the point that it did not appear that due and legal notice had not been given to the indorser Harrisson. They admitted that it was settled, that where all the parties or indorsers reside in the same city, or town, where the note is made payable, and where the holder resides, that personal notice is necessary; and, in such a case, notice through the post-office is not good. But they insisted that, where all the parties do not reside in the same city, or town, and where a notice, by mail, to one of the indorsers, who resides at a different place, would be good; and where notice from him, by

mail, back to the place, or post-office, where the note was protested, and the prior indorser resides, would be good to charge such indorser; in that case, notice directly to such indorser, through the same post-office, at as early a day, or earlier than the notice would arrive at the same post-office, if sent by an indorser residing at a different place, would be good. For, as they insisted, notice through the post-office, in such a case, being good when received circuitously through an indorser residing at a different place, it would be absurd to hold that an earlier notice, directly through the same office, by a person who, in giving the notice, necessarily acted as agent for all the indorsers, would be bad. *Sed vide Bowling* v. *Harrisson*, 6 How. U. S. R. 248.

The court refused the application.