## THE BANK OF LINDSBORG V. OBER & HAGEMAN.

1. AMENDMENT, *Considered as Made.* Where a case is tried before the court without a jury, and the petition is slightly defective, and the plaintiff during the trial asks leave to amend his petition so as to make it correspond with the facts proved, and the court grants such leave, upon condition that such amendment may be found to be necessary; and afterward, when the court makes its findings in the case and renders judgment therein, which findings and judgment are in favor of the plaintiff, the court grants leave to make such amendment, but it does not appear that the amendment is in fact made: *Held*, On petition in error brought by the defendant to the supreme court, that the amendment will be considered as having been made.

2. AGENCY; *Bank; Negligence.* Where the owner and holder of a promissory note delivers it to the bank of S., with the understanding that

the note shall be forwarded to the bank of L. for collection, and it is so forwarded and received, *held*, that the bank of L. is responsible to the owner of the note for any negligence in collecting such note, whereby the owner of the note suffers loss.

3. ———— And in such a case, where the bank of L. delivers such note to a notary public for demand, protest and notice, which notary public is the attorney of the bank, and is incompetent for the purpose of making such demand and serving such notice, and the demand is not properly made and notice is not properly served, so that the indorsers on the note are entirely discharged, *held*, that the bank of L. is responsible on the note to the owner thereof.

4. NOTARY PUBLIC; *Notice of Protest; Agency.* In Kansas, a notary public cannot, as a notary public or as a public officer, give notice of the non-payment of a promissory note; but if he gives any such notice, he does so merely as the agent of the holder of the note, or as the agent of the person employing him for such purpose.

## *Error from Saline District Court.*

THE opinion states the nature of the action, and the facts. August 27, 1883, E. W. Ober and D. H. Hageman, partners as *Ober & Hageman*, recovered against the *Bank of Lindsborg* a judgment for $201.25 and costs. This judgment the defendant bank brings here.

*John McPhail*, and *Garver & Bond*, for plaintiff in error.
*J. G. Mohler*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: Sometime prior to September 15, 1882, E. W. Ober and D. H. Hageman, partners as Ober & Hageman, held and owned a certain promissory note, which they deposited for collection with the First National Bank of Salina, Kansas, and said bank immediately transmitted the same for collection. to the Bank of Lindsborg, Kansas, and the Bank of Lindsborg, on September 15, 16, 17, or 18, 1882, delivered the same to John McPhail, a notary public, of Lindsborg, for him to make demand and protest, and to give proper notice. At the time when this promissory note was received by the Bank of Lindsborg, and at the time

when it was delivered to McPhail, it, with its indorsements, read as follows:

"$175.                        LINDSBORG, KAS., Feb. 25, 1882.

"On or before the fifteenth day of September, 1882, we promise to pay to J. B. Curtis, or order, one hundred and seventy-five dollars, for value received, negotiable and payable at the Bank of Lindsborg, in Lindsborg, Kansas, without defalcation or discount, with ten per cent. interest per annum from date; the interest, if not paid annually, to become a part of the principal, and bear the same rate of interest.

H. W. MALTBY.

F. A. MALTBY.

"No.—.   Witness: ——.   Postoffice: ——."

Indorsements:

"J. B. CURTIS, J. G. MOHLER."

"Pay to the order of the First National Bank, for collection.—OBER & HAGEMAN."

"For collection and returns on account of the First National Bank of Salina, Kas.—M. D. TEAGUE, *Cashier.*"

It is alleged that McPhail failed to make any proper demand, or to give any proper notice, and therefore that the indorsers were absolutely discharged from all liability on the note. Immediately afterward, Ober & Hageman commenced an action in the district court of Saline county against the First National Bank of Salina, the Bank of Lindsborg, and John McPhail, to recover the amount of the note. Each of the defendants demurred to the plaintiffs' petition, on the ground that it did not state facts sufficient to constitute a cause of action; and the court below sustained the demurrers as to the First National Bank of Salina and John McPhail, and overruled the demurrer as to the Bank of Lindsborg. The Bank of Lindsborg then answered to the plaintiffs' petition by filing a general denial. A trial was then had between Ober & Hageman on the one side and the Bank of Lindsborg on the other, before the court without a jury, and the court made certain special findings of fact and of law, and upon such findings rendered judgment in favor of the plaintiffs, Ober & Hageman, and against the Bank of Lindsborg, for $201.25, and costs of suit; and the Bank of

Lindsborg, as plaintiff in error, now brings the case to this court, and asks that such judgment shall be reversed.

The first point to be considered in the case is with regard to the sufficiency of the plaintiff's petition as against the Bank of Lindsborg. Now whether the petition was technically sufficient or not at the commencement of the action, or even when the trial was commenced, we think is wholly immaterial now; for during the trial the plaintiffs asked leave of the court to amend their petition so as to make it correspond with the facts proved, and the court at that time stated that it wished to hear and determine the case upon its merits, and if it was necessary to allow the amendment for that purpose, the petition might be so amended. Afterward, when the court made its special findings and rendered judgment thereon, it granted leave to the plaintiffs to make such amendment; but it does not appear that the amendment was ever in fact made. Now, as the amendment, if any was necessary, was slight and not very material, we think it may be considered as having been made, and we shall therefore proceed to consider the case upon its merits; and, upon the merits, which of the parties should recover in this action? Or, in other words, was and is the Bank of Linsborg liable to Ober & Hageman for the amount of said note, or for any amount thereon, because of the said failure of McPhail, the notary public, to make proper demand and to give proper notice? Upon questions of a kindred character there seems to be a great variety of opinion among the very able courts that have had such questions under consideration, and there even seems to be some irreconcilable conflict between the decisions of such courts, though probably if all the cases were carefully studied, and all the various circumstances upon which each case has been decided were carefully considered, it would be found that the conflict is not as great as at first it seems to be. Whether the First National Bank of Salina or John McPhail is liable, or not, are questions not necessary to be determined in this case, as the case is now presented to this court. The only question necessary to be determined

by this court is whether the Bank of Lindsborg is liable, or not. The court below found, among other things, as follows:

"1. That the note sued on was executed, delivered and indorsed as set up in the petition. Some time prior to its maturity it was by the firm plaintiffs residing and doing business in Salina, Kansas, delivered to the defendant First National Bank of Salina for collection, with the understanding that it would by them be forwarded to the defendant Bank of Lindsborg (at which place it was made payable) for collection, or protest and notice if necessary."

From this finding it would appear that the note was deposited with the First National Bank of Salina, *with the understanding* that the note would be forwarded by such bank to the Bank of Lindsborg for collection, and we think there was sufficient evidence to sustain this finding. The note was payable at the Bank of Lindsborg, which was situated at the town of Lindsborg, in McPherson county, Kansas, several miles distant from the city of Salina, where the plaintiffs resided and where the First National Bank of Salina was situated. The plaintiffs had previously had notes payable at that bank and other banks collected in the same manner. They knew that it was the custom of the First National Bank of Salina, and of other banks, to collect notes in that manner. And therefore it may fairly be presumed that when they delivered the note to the First National Bank of Salina, they simply intended to make the First National Bank of Salina their agent to transmit the note to the Bank of Lindsborg for collection, and intended to make the Bank of Lindsborg their agent, or sub-agent, for the collection of such note; and in such a case we think the great weight of authority would make the Bank of Lindsborg liable to the owners of the note for any negligence of its own whereby the owners of the note might suffer loss. (*Guelich v. National State Bank of Burlington*, 56 Iowa, 434, 436, and cases there cited; *Fabens v. Mercantile Bank*, 40 Mass. [23 Pick.] 330; *Dorchester &c. Bank v. N. E. Bank*, 55 Mass. [1 Cush.] 177; *Lawrence v. Stonington Bank*, 6 Conn. 521; *Bank of Louisville v. Bank*

*of Nashville,* 8 Baxt. [Tenn.] 101; *Daly v. Butchers' &c. Bank,* 56 Mo. 94; *Bank of Washington v. Triplett,* 26 U. S. [1 Pet.] 25; *Ætna Ins. Co. v. Alton City Bank,* 25 Ill. 243; *Stacy v. Dane Co. Bank,* 12 Wis. 629. See also *Allen v. Merchants' Bank,* 22 Wend. 215; *Ayrault v. Pacific Bank,* 47 N. Y. 570; *Kent v. Dawson Bank,* 13 Blatch. C. C. 237.)

Generally, in those cases where it is held that the second bank to which the note is sent for collection is not liable, it is so held upon the theory that the owners of the note simply employed the first bank to collect the same, and intended that the first bank should use its own agencies and its own means for collection, and should collect the note in its own way, and that the second bank should not be in any manner either an agent or sub-agent of the owners of the note, but should simply be an agent of the first bank.

It is true that in the present case nothing was said when Ober & Hageman delivered the note to the First National Bank of Salina as to how it should be collected, or in what manner it should be collected. But as before stated, the circumstances under which it was delivered; the fact that the First National Bank of Salina as well as other banks had a custom of collecting notes payable at a distant place by sending them to some bank at such place; that the plaintiffs knew of such custom; that they had previously had dealings with the Salina bank and had previously had notes collected in that manner by such bank; and had previously had notes payable at the Bank of Lindsborg collected in that manner—that is, by the Salina bank sending them to the Lindsborg bank for collection; and that this note was payable at the Bank of Lindsborg—taking all these facts together, we think they were sufficient from which the court might reasonably find that the note was delivered to the First National Bank of Salina with the understanding that it would be forwarded to the Bank of Lindsborg for collection. And from this finding we would think it would follow that the Bank of Lindsborg became and was the agent or sub-agent of the plaintiffs for the collection of the note. But

even if it was not, even if it was merely the agent of the First National Bank of Salina, there would still seem to be some good reason for allowing the plaintiffs to recover from the Bank of Lindsborg, provided the Bank of Lindsborg is liable at all to any person.

There is great reason for allowing a party who is injured to pass over intermediate agencies, if he chooses, to the final and ultimate agent which through its wrongful acts or negligence has caused the injuries complained of, and to permit such party to recover from such ultimate agent, although some one or more of the intermediate agencies might also be liable. It saves a circuity of action, and avoids a multiplicity of suits. If the Bank of Lindsborg is liable at all, it would seem better to permit the plaintiffs to recover directly from it, than to require them to sue and recover from the First National Bank of Salina, and then for the First National Bank of Salina to sue and recover from the Bank of Lindsborg.

But counsel for the Bank of Lindsborg claim that if the plaintiffs may pass over the First National Bank of Salina and sue the Bank of Lindsborg, then they must also necessarily pass over the Bank of Lindsborg and sue John McPhail, the notary public. We do not think that this necessarily follows. It does not appear that there was any agreement or understanding between the plaintiffs or the First National Bank of Salina, on the one side, and the Bank of Lindsborg, on the other side, that the note should be delivered to John McPhail, or to any other particular person, for demand, protest, and notice; but it would seem that the note was sent to the Bank of Lindsborg to be collected by it, leaving it to adopt its own agencies and its own means to collect the same. Besides, it would seem from the findings of the court that it selected a person who had been in its employ as an attorney at law, but who was incompetent for the purposes for which he was employed in the present case. The finding of the court with regard to this matter, is as follows:

"5. The said John McPhail, notary, is an attorney at law,

and was at the time of protest and prior the attorney of the Bank of Lindsborg. He, however, had never done any protesting of commercial paper for the bank, nor for anyone before, save for the bank one draft at or about this same time. He did not know how to protest, tried to borrow blanks, could not, and then borrowed a form book and copied from that. There were several other notaries in the place — whether with more experience, or not, is not shown."

But even if McPhail had been perfectly competent for the business for which he was employed, still there is much reason and much authority for holding the Bank of Lindsborg liable to the owners of the note for McPhail's failure to perform the duties intrusted to him. ( *Davey v. Jones*, 42 N. J. L. 29; *Titus v. Mechanics' National Bank*, 35 id. 588; *Reeves v. State Bank*, 8 Ohio St. 465; *Allen v. Merchants' Bank*, 22 Wend. 215; *Ayrault v. Pacific Bank*, 47 N. Y. 570; *Kent v. Dawson Bank*, 13 Blatch. C. C. 237; *Hoover v. Wise*, 91 U. S. 308; *Tyson v. State Bank*, 6 Blackf. 225; 1 Daniel on Negotiable Instruments, § 342.)

McPhail not only failed to make proper demand, but he also failed to give proper notice. He made the demand and gave the notice at least one day too soon. This was so found by the court below, and was so found upon evidence sufficient to sustain the finding. And there were some other irregularities in the notices, not necessary to be stated. It is true that in this state a notary public is a public officer who is required to take an oath of office and give bond, and as such public officer he is authorized "to demand acceptance or payment of foreign and inland bills of exchange and of promissory notes, and protest the same for non-acceptance or non-payment, as the case may require, and to exercise such other powers and duties as by the law of nations and commercial usage may be performed by notaries public." (Comp. Laws of 1879, ch. 71, § 6.)

But there was no necessity in the present case for the demand, protest or notice, to have been made or given through a notary public, and there was no necessity for any protest at all. The demand and notice was all that was necessary, all

that was required, and these might have been made and given by any person duly authorized by the Lindsborg bank. Besides, a notary public *cannot, as a notary public, or as a public officer,* give notice of the non-payment of a promissory note. (*Swayze v. Britton,* 17 Kas. 625; *Couch v. Sherill,* 17 id. 624; *Seaton v. Scovill,* 18 id. 433, 436, *et seq.*) If he gives any such notice he does so merely as the agent of the holder of the note, or as the agent of the person employing him to give such notice. In the case of *Couch v. Sherrill,* ante, it is said that "there is no presumption in favor of the action of the notary, as official action, because it is no part of his duty as notary to serve notices. If he serves any notice it is as agent of the holder, and not as notary." The notice may in fact be served by any person authorized by the holder, or by any agent or sub-agent of his. There is no necessity, as before stated, to employ a notary public to serve the notice; and as it is no part of the duty of a notary public to serve such notice, his sureties on his official bond are not liable for any failure on his part to properly serve the same. In the present case, it was the duty of the Bank of Lindsborg to serve the notice, and it had the right to serve the same through the agency of any person whom it might choose. The bank selected a person to serve the notice who was not competent, and the notice was not properly served; and hence we think, under such circumstances, the bank itself must be held to be liable.

The judgment of the court below will be affirmed.

All the Justices concurring.