THE FIRST NATIONAL BANK OF PAWNEE CITY v. H.
W. SPRAGUE.

[FILED MARCH 23, 1892.]

1. **Banks:** COLLECTIONS: DEFAULT OF CORRESPONDENT: LIABIL-
ITY.   Where a bank receives for collection a note or bill pay-
able at a distant point, with the understanding that such col-
lection is an accommodation only, or that it shall receive no
compensation therefor beyond the customary exchange, and it
transmits such paper to a reputable and suitable correspondent
at the place of payment, with proper instructions for the collec-
tion and remittance of the proceeds thereof, it will not be liable
for the defaults of such correspondent.

2. ———: ———: ———: ———.   In such case the holder will be
held to have assented to the employment in his behalf of such
agents as are usually selected by banks in the course of business
in making collections through correspondents, and the corre-

spondent so selected will, in the absence of negligence by the immediate agents and servants of the transmitting bank, become the agent of the holder only.

3. ——: ——: ——: ——. The exchange which is usually charged by banks for the transmission of money from one place to another, is not a sufficient consideration to support an implied undertaking to answer for the default of a correspondent, selected to make collections for customers according to the course of business of banks.

ERROR to the district court for Pawnee county. Tried below before BROADY, J.

*Story & Story*, for plaintiff in error, cited: *Bank of Washington v. Triplett*, 1 Pet. [U. S.], 25; *Wilson v. Smith*, 3 How. [U. S.], 764; *Dorchester & M. Bank v. Bank*, 1 Cush. [Mass.], 177; *Fabens v. Bank*, 23 Pick. [Mass.], 330; *Lawrence v. Bank*, 6 Conn., 521; *East Hadden Bank v. Scovil*, 12 Id., 303; *Allen v. Bank*, 15 Wend. [N. Y.], 482; *Jackson v. Bank*, 6 Harr. & J. [Md.], 146; *Citizens Bank v. Howell*, 8 Md., 530; *Tiernan v. Bank*, 7 How. [Miss.], 648; *Bowling v. Arthur*, 34 Miss., 41; *Baldwin v. Bank*, 1 La. Ann., 13; *Hyde v. Bank*, 17 La., 560; *Bank of Louisville v. Bank*, 8 Baxter [Tenn.], 101; *Mechanics Bank v. Earp*, 4 Rawle [Pa.], 384; *Bellmire v. Bank*, 1 Miles [Pa.], 173; *Ætna Ins. Co. v. Bank*, 25 Ill., 243; *Stacy v. Bank*, 12 Wis., 629; *Daly v. Bank*, 56 Mo., 93; *Guelich v. Bank*, 56 Ia., 434; *Bank of Lindsborg v. Ober*, 3 Pac. Rep. [Kan.], 324; *Allen v. Bank*, 22 Wend. [N. Y.], 215; *Bank of Republic v. Milliard*, 10 Wall. [U. S.], 152; *Bank v. Whitman*, 6 Otto [U. S.], 343; *Dana v. Bank*, 90 Am. Dec. [Mass.], 216; *Natl. Bank v. McDonald*, 51 Cal., 64; *Hancock v. Colyer*, 96 Am. Dec. [Mass.], 730.

*J. L. Edwards*, contra, cited: *Kent v. Dawson Bank*, 13 Blatchford [U. S.], 237; *Allen v. Bank*, 22 Wend. [N. Y.], 215; *Montgomery Co. Bank v. Albany*, 3 Seld. [N.

320        NEBRASKA REPORTS.        [Vol. 34

First Natl. Bank of Pawnee City v. Sprague.

Y.], 463; *Reeves v. Bank*, 8 O. St., 465; *Van Wart v. Woolley*, 3 Barn. & Cress. [Eng.], 439; *Mackersy v. Ramsays*, 9 Clarke & F. [Eng.], 818; *Hoover v. Wise*, 91 U. S., 308; *Bank of Washington v. Triplett*, 1 Pet. [U. S.], 25; *Exchange Bank v. Natl. Bank*, 112 U. S., 276; *Tradesman's Bank v. Third Natl. Bank*, Id., 293; *Merchants & M. Bank v. Stafford*, 44 Conn., 567; *Balbach v. Frelinghuysen*, 15 Fed. Rep. [N. J.], 675; *Hyde v. Bank*, 7 Bliss [Ill.], 156.

POST, J.

On the 3d day of February, 1888, at Pawnee City, in this state, the defendant in error drew a sight draft on Davis & Wedd, residing at Canon City, Colorado, of which the following is a copy:

"$85.75.        FIRST NATIONAL BANK,

"PAWNEE CITY, NEB., Feb. 3, 1888.

"Pay to the order of First National Bank of Pawnee City, Neb., eighty-five and $\frac{75}{100}$ dollars, with exchange and collection charges, value received, and charge the same to account of        H. W. SPRAGUE.

"To Messrs. Davis & Wedd, Canon City, Colo.

"No. C 5238."

The said draft was by the drawer left with the plaintiff in error, at its banking house in Pawnee City for collection, and by it forwarded for collection to the Exchange Bank of Canon City, Colorado, and by the latter collected in full from the drawees. The last named bank failed without having remitted the proceeds of said draft, and no part thereof has been paid either to the plaintiff or the defendant in error. There is no controversy with reference to the facts on this branch of the case. Defendant in error was a customer of the bank and was in the habit of shipping butter to parties at distant points, and making sight drafts therefor payable to its order, credit being given him

for the proceeds thereof when collected.    It further appears that defendant in error was permitted by the bank to overdraw his account by reason of such collections.    It does not appear that plaintiff in error was in the habit of making any charge for collecting said drafts.    With reference to the transaction in question he testifies as follows:

Q. Did you expect them to charge you anything for collecting this draft?

A. Not directly; no, I think not.    If I had not been doing my banking business with them I would expect to pay them, but as I was doing my business there, and they charged two per cent for overdrafts right along, and I frequently made overdrafts, I supposed they did this as a favor.

There is no pretense that the bank in this case was guilty of negligence in forwarding the draft, in the selection of its correspondents, or in giving instructions to the latter with reference to the collection or remittance of the money when collected.

The only question for consideration is whether the plaintiff in error, in view of the facts stated, is answerable for the default of the bank at Canon City.

The court on its own motion gave the following instruction:

"The court instructs the jury that when a home bank receives for collection merely a draft drawn upon a person residing in another place, which draft, from the nature of the business and general usage in such cases, will have to be transmitted for collection to some correspondent bank at the place where the debtor resides, and for the collection of which draft the home bank will receive only the customary exchange, in the absence of any express agreement between the parties to the contrary, the home bank, if it exercises due and ordinary care in selecting such correspondent bank and transmits such draft for collection to such correspondent bank, will not be liable for the default

24

or failure of such correspondent bank to remit moneys collected by it upon such draft."

If this instruction correctly states the law applicable to the case, the motion for a new trial should have been sustained. The courts, as well as the text writers, differ widely upon the question presented. It is held by the courts of the United States, New York, New Jersey, Ohio, Indiana, Minnesota, and perhaps others following the English cases, that where a note or bill is received for collection by a bank and by it transmitted to a correspondent at a distance for presentment and demand, the latter is the agent of the transmitting bank only, which will be liable for the default of its correspondent. This view is also approved by Mr. Daniel in his work on Negotiable Instruments, vol. 1, 324. The leading case holding thus, is *Allen v. Merchants Bank*, 22 Wend. [N. Y.], 215, in which, by a vote of fourteen to ten senators, the opinion of Chancellor Walworth in the same case was overruled, and which has then been followed and approved by the court of appeals in numerous cases. It will be observed, too, that when since this rule was adopted by the supreme court of the United States (*Hoover v. Wise*, 91 U. S., 308), dissenting opinions were filed by Justices Miller, Clifford, and Bradley. Mr. Freeman in a note to *Allen v. Merchants Bank*, 34 Am. Dec. [N. Y.], 315, while expressing a preference for the rule above stated, says: "The preponderance of authority is against the principal case and in favor of the rule that the liability of a bank, taking a note or bill for collection which is payable at a distance, extends merely to the selection of a suitable and competent agent at the place of payment, and to the transmission of the paper to such agent with proper instructions, and that the corresponding bank is the agent, not of the transmitting bank, but of the holder, so that the transmitting bank is not liable for the default of the correspondent, where due care has been used in selecting such correspondent." The foregoing proposition is

sustained by the following cases: *Fabens v. Bank*, 23 Pick. [Mass.], 332; *Dorchester Bank v. N. E. Bank*, 1 Cush. [Mass.], 177; *Jackson v. Bank*, 6 Har. & J. [Md.], 121; *Bank v. Howell*, 8 Md., 547; *Bank v. Scovill*, 12 Conn., 303; *Lawrence v. Bank*, 6 Id., 521; *Milliken v. Shapleigh*, 36 Mo., 596; *Daly v. Bank*, 56 Id., 94; *Ætna Ins. Co. v. Bank*, 25 Ill., 246; *Bank v. Bank*, 8 Baxter [Tenn.], 101; *Guelich v. Bank*, 56 Ia., 434; *Stacy v. Bank*, 12 Wis., 629*; *Tiernan v. Bank*, 7 How. [Miss.], 648; *Bowling v. Arthur*, 34 Miss., 41; *Bank v. Earp*, 4 Rawle [Pa.], 384; *Baldwin v. Bank*, 1 La. Ann., 13; *Hyde v. Bank*, 17 La., 560; *Bank v. Ober*, 31 Kan., 599. The doctrine of these cases is expressly approved in Morse on Banking [3d Ed.], ch. 17.

A discussion of the reasons which have so often been advanced by courts in support of the opposing views of the question involved will not be profitable in this connection. In our opinion the rule stated in the instruction given by the court and set out above is not only in accord with the weight of authority, but is sustained by reasons sounder in themselves, and more in consonance with the principles which underlie and determine the relations of principal and agent.

This is believed to be a typical case, and to be fairly illustrative of the method of making collections through the agency of banks in this country at this time. Whatever may have been the reasons, arising out of the business methods existing at the time *Allen v. Merchants Bank* was decided, for the rule adopted therein, the reason for such a rule is wanting in view of the present changed conditions. Banks, as a general rule, have now no facilities for making collections at distant points not enjoyed by the business public at large. Formerly they may have enjoyed a monopoly of information relative to location, names, and credits of banks at distant or remote points. To-day, however, business men by means of the informa-

tion derived from the press and the numerous directories at their command, may collect their bills through the medium of banks at the place of payment as cheaply, safely, and expeditiously as their local banks.

It is more convenient, and therefore more frequent, for customers to deposit drafts and acceptances with their home banks for collection, paying therefor the cost of exchange only. In this case, for instance, the bank not only made the collections for defendants in error without charge, but allowed him to overdraw on account thereof, thus realizing on his paper at once. As said by Chancellor Walworth in *Allen v. Merchants Bank,* there is in cases like this no consideration sufficient to support an undertaking by a bank to answer for the default of a correspondent where it has, without fraud or negligence, in proper time, forwarded the paper to a reputable correspondent with proper instructions, and when the loss is not occasioned by the act or omission of any of its immediate agents or servants. The theory of those cases, which hold the remitting bank liable, is that the advantage of exchange between different points is a sufficient inducement for banks to assume the liability sought to be imposed. This may be conceded so far as the inconvenience and costs of collection is concerned, but to us it seems wholly inadequate as a consideration for an implied undertaking to insure against loss on account of the fraud or insolvency of a correspondent.

The supreme court of Tennessee, in *Bank v. Bank,* 8 Baxter, cited above, after a thorough examination of the cases on the subject, summarizes as follows: "The more reasonable and just construction of the undertaking of the bank in which the bill is deposited for collection is, that when the bill is payable at another and distant place, the bank so receiving the bill discharges itself of liability by transmitting the same, in due time, to a suitable and reputable bank or other agent at the place of payment; and

in such case it is manifest that a subagent must be employed, and the assent of the principal is implied, as it cannot be said that the receiving bank was expected or bound to send one of its own officers to the distant point of payment for the purpose of personally attending to the collection for the very inadequate compensation usually paid to banks for such service." To the views thus expressed we give our unqualified assent. The motion for a new trial should have been sustained. The judgment of the district court is reversed and the case remanded for further proceedings in the district court.

REVERSED AND REMANDED.

THE other judges concur.