NUTRENA FEED MILLS, INC., APPELLANT, V. SUPERIOR WHOLESALE GROCERY COMPANY, APPELLEE.

FILED MARCH 11; 1932. No. 28011.

*Borders, Borders & Warrick, T. W. Cole* and *Cornelius Roach, Jr.,* for appellant.

*Stubbs & Stubbs, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and Wright, District Judge.

WRIGHT, District Judge.

The plaintiff, Nutrena Feed Mills, Inc., appellant in this court, brought this action against the defendant, Superior Wholesale Grocery Company, a corporation engaged in the wholesale grocery business at Superior, Nebraska, for goods, wares and merchandise sold and delivered. The defendant answered, admitting the purchase and receipt of the goods and alleging payment therefor. Trial was had to the court without a jury. The findings were for the defendant and judgment entered dismissing the cause, from which plaintiff has appealed to this court.

The plaintiff shipped the merchandise in question to the defendant at Superior, Nebraska, and to insure payment at time of delivery drew a sight draft on the defendant for the amount of the purchase price, to which it attached the bill of lading for the merchandise shipped, and sent these two, through its bank at Kansas City, to the State Bank of Superior, Nebraska, for collection and remittance, with instructions to deliver the bill of lading upon payment of the draft. Upon receipt of notice from the State Bank of Superior that the draft was in its hands for collection, the defendant, acting through its president, personally delivered its check to the bank over the counter, for the full amount claimed. This check was drawn on the collecting bank against a deposit of the defendant with the bank, then more than sufficient to meet the same, and was by the bank accepted. Upon the receipt and acceptance of the check the bank marked the draft "Paid" and delivered the same, together with the bill of lading at-

tached, to the defendant. The bank at that time had on hand in cash in its vaults more than enough to pay this check and at that time was paying all checks of its depositors presented over the counter. The bank, however, failed to charge this check against the account of the defendant, and two days later, when it was taken over by the banking department of the state, the check was found among the other papers of the bank.

The plaintiff contends that the issuance and delivery of the check amounted to a conditional payment only; that since the check was not by the bank charged against the account of the defendant it was never honored and the defendant parted with nothing of value; that the collecting bank had authority only to collect and remit and could accept nothing but cash or its equivalent in payment, and that the mere issuance and delivery of the check did not constitute a payment of the collection item. The defendant, on the other hand, insists that when a draft with a bill of lading attached is sent to a bank for collection, and the drawee of the draft tenders to the bank a check on the collecting bank, the drawee of the draft being a depositor in the collecting bank with sufficient funds on deposit to pay the check and the bank has sufficient cash on hand to pay the check, if the bank accepts such check and marks the draft "Paid" and delivers it up to the drawee with the bill of lading, the draft and the account it represents are paid; that the check is, under such circumstances, equivalent to a payment in cash.

There seems to be no doubt that the State Bank of Superior was the agent of the plaintiff for the purpose of collecting and remitting the proceeds of the sight draft. *First Nat. Bank of Pawnee City v. Sprague*, 34 Neb. 318; *Omaha Nat. Bank v. Brady State Bank*, 113 Neb. 711; *Henefin v. Live Stock Nat. Bank*, 116 Neb. 331; *State v. Nebraska State Bank*, 120 Neb. 539.

The plaintiff contends, however, that, even though the bank was its agent, the mere passing over the bank counter of defendant's check, and the surrender of the bill of

lading together with the sight draft marked "Paid," did not constitute a payment of the debt, since the bank failed to charge the amount of the check on its books against the account of the defendant. In considering a somewhat similar situation this court, in *Scotts Bluff County v. First Nat. Bank,* 115 Neb. 273, held: "When a bank gives to one of its depositors credit in his pass-book for a check drawn by another of its depositors, having on its books ample funds to pay the check, such credit is equivalent to a payment of the check so deposited; and the depositor of the check is entitled to be considered a depositor of the cash represented by the check even though, without knowledge or connivance on his part, it was not entered on the books of the bank and the money was not further actually transferred." And in the opinion said: "No duty rested upon the treasurer (depositor) to see that the bank credited the deposit on its books, nor to see that the check was charged to Barton's (the drawer of the check) account on its books. The transaction was the same as if the bank had cashed Barton's check and then had entered the cash deposit in the pass-book to the credit of the treasurer."

While in this case there is no evidence that cash was actually counted out or physically appropriated to the payment of the plaintiff's draft, it is conclusively shown that the defendant presented its check which was accepted by the bank; that defendant had on deposit with the bank sufficient funds to pay the check and the bank had cash in its vaults more than sufficient to pay the amount and was then doing business in the usual manner, cashing all checks that were presented over its counter; and that upon receipt of the check it stamped the draft for which it was given "Paid" and delivered the same to the defendant. Under the circumstances, it became the duty of the bank to allocate a sufficient amount of its cash on hand to the payment of the check and from that time it held the amount as the funds of the plaintiff. It became no part of defendant's duty to follow the transaction further

or to ascertain whether the bank made the proper entries on its books to show the true situation.

The supreme court of South Dakota, having very much the same question before it, in *Marland Refining Co. v. Penn Soo Oil Co.*, 54 S. Dak. 10, said: "By giving the check to appellant's accredited agent, so much of respondent's money on deposit in the bank as was necessary to pay the check was segregated from his account and was in the possession of appellant through his said agent. In this case there was an agreement clearly implied that the giving of the check should be payment. Respondent had sufficient funds on deposit to pay the check, and the bank had sufficient funds on hand to pay it. It was the bank's duty to have charged the amount of the check to respondent's account and to have remitted the same to the appellant, but its failure to do so was not the fault of respondent, but of the bank who was acting as agent for appellant." Had the defendant in the present case presented its check and demanded cash, then given back the cash in payment of the draft, there could be no question that the bank then held it for the plaintiff. The result of the transaction was the same, and the fact that the parties did not go through the useless process of counting out the money and then transferring it back and forth would not change the situation. When the bank accepted the check and acknowledged the payment of the draft it amounted to a payment of the debt.

In *Andrew v. State Bank of Dexter*, 204 Ia. 565, that court held: "A bank which, as agent, receives for collection a draft, with orders to collect in cash only, and to remit to the owner of the draft, and which accepts in payments of the draft the amply protected check of the drawee upon itself, must be deemed to have collected the draft in cash, even though it fails either (1) to cancel the said check or (2) to charge the account of the drawer of the check with the amount thereof." And in the opinion the court, on the question of failure to cancel the check and make the proper charges on its books,

say: "Mechanical cancelation of the check and the process of recording items on the books were acts beyond the control of both the principal and Mr. Hammond. That was a matter of mere convenience to the agent, and could and did not affect the rights and equities of the parties or the merits of this controversy."

In this case the question arose on a claim of the principal for preferential payment out of the funds of the agent bank, it having become insolvent; but we can see no reason why the rule should be different in the present case. In each instance the delivery and acceptance of the check constituted payment, and the funds were thenceforth held by the collecting bank in trust for the principal.

The supreme court of Kansas in *Goodyear Tire & Rubber Co. v. Hanover State Bank,* 109 Kan. 772, where the payment was made as in this case by a check on the collecting bank against sufficient funds to meet the same, said: "The court is of the opinion that the rule applies that where a payment to a bank is made by a check drawn thereon the result is the same as though the depositor had presented his check, received the money over the counter, and then used it in making the payment."

Undoubtedly in those cases where the bank accepts a check when it does not have funds on hand to pay the amount or when a check is accepted drawn on another bank, which is dishonored, such acceptance by the collecting bank would not constitute payment. Under the facts in the present case we hold that the acceptance of the check by the agent bank amounted to a payment of the debt.

The judgment of the district court dismissing the action is

AFFIRMED.